The central issue presented in this case is whether §25-5-77 (a), Ala. Code 1975, requires an employer and/or its workers' compensation insurance carrier to furnish a disabled claimant with a motor vehicle. That section provides, in part:
 "In addition to the compensation provided in this article and Article 4 of this chapter, the employer . . . shall pay an amount not to exceed the prevailing rate or maximum schedule of fees as established herein of reasonably necessary medical and surgical treatment and attention, physical rehabilitation, medicine, medical and surgical supplies, crutches, artificial members, and other apparatus as the result of an accident arising out of and in the course of the employment, as may be obtained by the injured employee . . . ."
§ 25-5-77 (a), Ala. Code 1975 (emphasis added). The central issue, therefore, may be broken down into two principal subparts:
 (1) Does a motor vehicle come within the term other apparatus" as that term is used in § 25-5-77(a)? and, if so,
 (2) Is the purchase or a motor vehicle in this case a "reasonably necessary" expense within the meaning of that Code section?
We conclude that a motor vehicle does not come within the term "other apparatus" as that term is used in this statute. Because of this conclusion, we do not address whether *Page 613 
the purchase of a motor vehicle would be "reasonably necessary" in this case.
 Facts and Procedural History
Maylond T. Bishop was a policeman employed by the City of Guntersville. On July 16, 1993, Bishop was shot in the back while he was on duty. As a result, he was rendered paraplegic, and he is now confined to a wheelchair. He sued for workers' compensation benefits, and on June 16, 1995, the trial court entered findings of fact, conclusions of law, and a judgment in Bishop's lawsuit against the City and its workers' compensation insurance carrier, Municipal Workers' Compensation Fund Inc. (collectively, the "City"). Bishop and the City had stipulated, and the trial court found: (1) that Bishop was an employee of the City of Guntersville when he sustained his injury; (2) that the injury arose out of and in the course of his employment; (3) that Bishop is permanently and totally disabled as a result of the injury; (4) that the City received prompt and immediate notice of the injury; and (5) that all Bishop's medical expenses and temporary total disability benefits have been, or will be, paid. As a result the trial court entered a final judgment setting Bishop's weekly lifetime benefit payments at $328.87.
Before the trial court entered its judgment, Bishop had purchased a Chevrolet van for approximately $24,500. After the trial court entered its judgment, Bishop requested that the City reimburse him for the full purchase price of the van. The City agreed to pay for the cost of installing a wheelchair lift in the van, but denied that it was responsible for the full purchase price of the vehicle. The City subsequently sued Bishop in the Marshall Circuit Court, seeking a judgment declaring that §25-5-77(a) did not require the City to reimburse Bishop for the purchase price of the van.
The circuit court entered a judgment declaring that the City was responsible for the full purchase price of the van. The Court of Civil Appeals affirmed. City of Guntersville, MunicipalWorkers' Compensation Fund v. Bishop, 728 So.2d 605 (Ala.Civ.App. 1997). We granted certiorari review.
In support of his contention that he should be reimbursed for the price of the van, Bishop presented letters from two physicians, both of whom are associated with the Department of Rehabilitative Medicine at the University of Alabama at Birmingham ("UAB") School of Medicine. Both physicians wrote, in essence, that it was necessary for Bishop to have a van with a wheelchair lift to facilitate transportation. Specifically, Dr. Laura Kezar[1] wrote, in part:
 "I am currently following [Mr. Bishop] for chronic pain syndrome following spinal cord injury. His case has been complicated by the development of severe overuse syndromes involving the bilateral upper extremities, right worse than left. He has recently undergone carpal tunnel release at the right wrist. Because of these problems which are a direct result of his spinal cord injury, I feel it is medically necessary
that he obtain a van with a wheelchair lift in order to restore his mobility to the highest possible level of independent functioning."
(Emphasis added.) Dr. C.T. Huang[2] wrote:
 "Mr. Bishop was injured in 1993 resulting in T11 paraplegia, complete. As a result of this permanent injury, the patient needs a van for transportation."
(Emphasis added.)
At the trial of this case, the parties entered into the following joint stipulation of facts:
 "1. On July 16, 1993, [Bishop] was employed as a police officer with the City of (Guntersville. On that day, [Bishop] was shot in the back by an assailant while [Bishop was] performing his duties as a police officer. As a result of the gunshot wound, [Bishop] was rendered paraplegic and is wheelchair bound.
 "2. On June 16, 1996, [the Marshall Circuit Court] entered a final judgment in *Page 614 
Civil Action No. CV-94-374 entitling [Bishop] to receive lifetime [workers'] compensation benefits from [the City] in the sum of $328.87 per week. The Court also ordered [the City] to pay all reasonable and necessary medical expenses in connection with [Bishop's] injuries as required by § 25-5-77.
 "3. In order to facilitate his transportation in a wheelchair, [Bishop] on or about March 29, 1995. purchased a 1994 Chevrolet van for proximately $24,500.00.
 "4. [[Bishop] asserts that the van is a `reasonable and necessary' medical expense, and has requested that the [City] reimburse him for the purchase price of the van.
 "5. The [City] has paid to have a wheelchair lift installed in the van, but denies any obligation pursuant to the Alabama Workers' Compensation Act to pay for the van itself.
 "6. [Bishop] has supported his request with letters from his two physicians stating that the van is medically necessary for `transportation,' including regularly scheduled visits to his doctors for the purpose of monitoring his medical condition, and for restoring [Bishop's] mobility `to the highest possible level of independent functioning.' Other than as stated, there are no. . . medical purposes for the van.
 "7. The parties agree that the van has made it much more convenient to transport [Bishop] from place to place, and that it has significantly increased [Bishop's] mobility and sense of independence.
 "8. The parties disagree [as to whether] the van is medically necessary or constitutes a medical `apparatus' within the meaning of § 25-5-77(a), [Ala. Code 1975]."
(Emphasis added) The trial court entered a judgment declaring that the City was responsible for the full purchase price of the van. In affirming, the Court of Civil Appeals, noting that it was bound to "liberally construe the Act," 728 So.2d at 610, determined that the van came within the statutory term "other apparatus" and that it was "reasonably necessary" under the facts of this case. 728 So.2d at 606.
The two dissenting judges wrote, however, that, while they "agree[d] that a wheelchair lift would be an `other apparatus' under Ala. Code 1975, § 25-5-77(a), [they did not] agree that the Legislature intended that the entire cost of a wheelchair-accessible van be included in that term." 728 So.2d at 611. Consequently, they would have adopted the reasoning of the West Virginia Supreme Court of Appeals in Crouch v. West Virginia Workers' Compensation Comm'r,184 W. Va. 730, 403 S.E.2d 747 (1991). In that case, the West Virginia court held that because the injured employee testified that he would have owned an automobile had he not been injured, the value of a mid-priced automobile of the same model year as the van the employee purchased should have been deducted from the amount awarded by the court as compensation for the purchase price of the van.
 Discussion
This case presents a question of first impression: Does a motor vehicle come within the meaning of the term "other apparatus" as that term is used in § 25-5-77(a)? The authors of a workers' compensation treatise have written the following regarding the subject:
 "[T]he employer is liable for medical supplies and any artificial apparatus incident to the effective treatment of the injury.
Typically, this liability has included, but is not limited to, the following: new or replacement artificial members, crutches, medication, general medical and surgical supplies, and like materials."
Jack B. Hood, Benjamin A. Hardy, Jr., and E.J. Saad, AlabamaWorkers' Compensation § 10-3 (3d ed. 1993) (footnotes omitted; emphasis added). Whether a motor vehicle may be included in the same category as crutches, artificial limbs, or a wheelchair lift is not a question one would intuitively answer in the affirmative. However, the question here is what the Legislature intended the term "other apparatus" to mean. To determine what the Legislature intended, we must examine both the history of the workers' compensation statute and the policies underpinning it.
Although this issue is one of first impression in this Court, it has been considered and *Page 615 
decided by the courts of several other states with similar statutes. Those courts that have considered this issue appear to be divided into three groups: (1) those holding that the purchase price of a motor vehicle is not compensable; (2) those holding that it is compensable; and (3) those holding that, while the full purchase price may not be compensable, some part of it may be.
Courts in Pennsylvania, Colorado, South Carolina, Maryland, New York, and North Carolina have determined that the purchase price of a motor vehicle is not reimbursable under those states' respective workers' compensation statutes See Bouge v. SDI Corp.,Inc., 931 P.2d 477 ((Colo.App. 1996) (statute providing that the employer "shall furnish . . . medical, hospital, and surgical supplies, crutches and apparatus' does not include a van, because a van does "nothing to care for or remedy the quadriplegia");Petrilla v. Workmen's Compensation Appeal Board, 692 A.2d 623
(Pa.Commnw.Ct. 1997) (statute requiring employer to pay for "medicines and supplies, hospital treatment, services and supplies and orthopedic appliances and prostheses" does not require employer to pay for van, although modifications to van to allow claimant to use it are covered); Strickland v. Bowater,Inc., 322 S.C. 471, 472 S.E.2d 635 (Ct.App. 1996) (statute providing that an employer must pay for "other treatment or care" does not require that an employer pay for a van); R T Constr.Co. v. Judge, 323 Md. 514, 594 A.2d 99 (1991) (statute requiring employer to provide "other prosthetic appliance[s] does not require employer to pay for van); McDonald v. Brunswick Elec.Membership Corp., 77 N.C. App. 753, 336 S.E.2d 407 (1985) (neither statutory provision requiring employer to provide "other treatment or care" nor provision requiring it to provide "rehabilitative services" required employer to pay for van);Nallan v. Motion Picture Studio Mechanics Union, Local No. 52,49 A.D.2d 365, 375 N.Y.S.2d 164 (1975), rev'd on other grounds,40 N.Y.2d 1042, 391 N.Y.S.2d 853, 360 N.E.2d 353 (1976) (van not a "medical apparatus or device" under New York statute).
Courts in, Arizona, Iowa, Florida, Maine, and Mississippi have held that an employer may be required to reimburse a claimant for the purchase price of a motor vehicle under certain circumstances. See Brawn v. Gloria's Country Inn, 698 A.2d 1067
(Me. 1997) (statute entitling claimant to "reasonable and proper medical, surgical and hospital services, nursing, medicines, and mechanical, surgical aids, as needed" requires employer to provide a van); Mississippi Transp. Comm'n v. Dewease,691 So.2d 1007 (Miss. 1997) ("where there is evidence that a wheelchair van is reasonably necessary, it may qualify as an `other apparatus' for which medical benefits shall be paid"); Manpower TemporaryServices v. Sioson, 529 N.W.2d 259 (Iowa 1995) (statute requiring employer to provide "reasonable surgical, medical, . . . ambulance and hospital services and supplies . . . and . . . reasonably necessary transportation expenses" does not require employer to provide van except in rare circumstances); KraftDairy Group v. Cohen, 645 So.2d 1072 (Fla.Dist.Ct.App. 1994) ("vehicle may constitute `other apparatus'" as that term is used in workers' compensation statute, but only if it would improve the condition caused by the accident or aid in recovery from injuries); Terry Grantham Co. v. Industrial Comm'n of Arizona,154 Ariz. 180, 741 P.2d 313 (Ct.App. 1987) ("[w]here an industrial injury necessitates the modification or substitution of an automobile in order to accommodate a wheelchair or artificial member and to restore in part a claimant's former ambulatory ability, such costs may be awarded as `other apparatus'").
Courts in North Dakota and West Virginia have taken a middle route. Those courts require that an employer reimburse a claimant for the difference between the purchase price of a van and the purchase price of a regular automobile. See Meyer v. North DakotaWorkers Compensation Bureau, 512 N.W.2d 680 (N.D. 1994); andCrouch v. West Virginia Workers' Compensation Comm'r, 184 W. Va. 730,403 S.E.2d 747 (1991).
Although an analysis of the positions of our sister states on this issue is informative, to answer the question before us we must look to the origins and purposes of our own workers' compensation statute. As Professor Larson has written, "[t]he necessity for *Page 616 
workers' compensation legislation arose out of the coincidence of a sharp increase in industrial accidents attending the rise of the factory system and a simultaneous decrease in the employee's common-law remedies for his or her injuries." 1 Arthur Larson 
Lex K. Larson, Larson's Workers' Compensation Law, § 4.00 (1997). In an effort to meet changing societal needs more efficiently than they were being met by the common law and early statutory law, the states began enacting workers' compensation statutes, in their modern form, in the first part of this century. Larson, § 5.30. In doing so, the states created a new system that was delicately balanced between the interests of employees and the interests of employers. Under this new system, the employer is automatically responsible for paying medical and disability benefits to employees who are injured on the job. "[T]he employee and his or her dependents, in exchange for . . . modest but assured benefits, give up their common-law right to sue the employer for damages for any injury covered by the act . . ." Larson, § 1.10(e). "A correctly balanced underlying concept of the nature of workers' compensation is indispensable to an understanding of current cases and to a proper drafting and interpretation of compensation acts." Larson, § 1.20. The Alabama Legislature incorporated that balanced concept in our workers' compensation statute. Understanding that balance is, of course, a constant challenge for courts. In deciding the issue at hand, we must determine how to best effectuate the intended aims of the compensation statute while maintaining the balance upon which it was based.
To adopt the position that Bishop would have this Court adopt would, we believe, disturb the balance of interests that is at the heart of the workers' compensation system. While we recognize our duty to liberally construe the statute,[3] we must nonetheless hold that a motor vehicle does not come within the term "other apparatus" as that term is used in § 25-5-77(a).
The facts are undisputed. The parties stipulated that Bishop purchased the van "[i]n order to facilitate his transportation in a wheelchair." They further stipulated that "the van is medically necessary for `transportation,' including regularly scheduled visits to his doctors." Bishop urges this Court to hold that his van is a reasonably necessary "other apparatus" under the statute because he uses it for transportation to and from his doctors' offices, rehabilitation clinics, etc. We note, however, that in § 25-5-77(f) the Legislature specifically provided for expenses associated with transportation to and from such offices. In that section, the Legislature provided that an employer must pay a claimant's transportation costs, based on the distance the claimant travels to and from medical and rehabilitative treatment.
The City argues, and we agree, that, because the Legislature specifically provided for transportation costs in §25-5-77(f), it would not be logical to conclude that the Legislature intended for the more general language of § 25-5-77(a) to cover costs related to transportation as well.
The parties also agree that the van is necessary "for restoring [Bishop's] mobility `to the highest possible level' of independent functioning." It is important to note that the parties further stipulated that "[o]ther than as stated, there are no other medical purposes for the van." If we held that the workers' compensation statute required reimbursement of a claimant's expenses where the sole purpose of those expenses was to enhance the claimant's independent functioning, we believe we would be dangerously disturbing the balance of interests that the Legislature built; into the workers' compensation system.
Our workers' compensation system was designed to provide limited, but guaranteed, benefits to employees injured on the job. In addition to those benefits, employers are required to pay for medical and rehabilitative treatment. However, we hold that those benefits do not include the purchase price of a motor vehicle. Put simply, a motor vehicle is not a device that, in and of itself, can serve to improve a disabled claimant's condition. Its only use is to improve the claimant's independent functioning. While *Page 617 
human concern would cause one to wish that a disabled person would reach the maximum possible level of independent functioning, we believe that allowing reimbursement for such costs as are claimed in this case would stretch the workers' compensation statute beyond its intended meaning. Consequently, we hold that a motor vehicle is not within the term "other apparatus" as that term is used in § 25-5-77(a), Ala. Code 1975. Because we make that determination, we need not consider whether a motor vehicle would be "reasonably necessary" in this case if it were such an apparatus.
The judgment of the Court of Civil Appeals is reversed and the cause is remanded.
REVERSED AND REMANDED.
HOOPER, C.J., and SHORES, HOUSTON, COOK, SEE, and LYONS, SHORES, concur.
[1] Dr. Kezar is an assistant professor of rehabilitation medicine in the Department of Rehabilitation Medicine.
[2] Dr. Huang is a physician in the Department of Rehabilitation Medicine.
[3] Riley v. Perkins, 282 Ala. 629, 213 So.2d 796 (1968).