989 So.2d 1074 (2006)
PERRY & WILLIAMS, INC.
v.
William Earl MITCHELL.
2050508.
Court of Civil Appeals of Alabama.
November 17, 2006.
William H. Webster of Webster, Henry, Lyons & White, P.C., Montgomery, for appellant.
J. Greg Allen of Beasley, Allen, Crow, Methvin, Portis & Miles, P.C., Montgomery, for appellee.
PITTMAN, Judge.
In May 1999, the Montgomery Circuit Court entered a judgment finding that William Earl Mitchell ("the employee") had suffered a disabling injury in July 1996 from inhaling toxic fumes while in the course of his employment with Perry & Williams, Inc. ("the employer"), so as to warrant an award of compensation under the Alabama Workers' Compensation Act, § 25-5-1 et seq., Ala.Code 1975 ("the Act"). That judgment also specified that the employee's right to "future medical benefits" (see generally § 25-5-77, Ala. Code 1975) would "remain open," i.e., that the employer's liability for future medical expenses resulting from the injury would *1075 persist despite the award of other benefits under the Act.
In November 2005, the employee filed what he termed a "motion to enforce" that portion of the May 1999 judgment pertaining to future medical benefits. In that motion, the employee claimed that his medical condition had deteriorated, that he was "in need of a scooter and a lift for the scooter for mobility," and that the employer should pay for the scooter and the lift. The employer filed a response in opposition to the employee's motion, contending that the scooter and the lift did not fall within the scope of that portion of § 25-5-77(a), Ala.Code 1975, mandating that employers provide "reasonably necessary medical and surgical treatment and attention, physical rehabilitation, medicine, medical and surgical supplies, crutches, artificial members, and other apparatus as the result of an accident arising out of and in the course of the employment" (emphasis added). The employer submitted affidavits from the employee's treating physicians, i.e., a family-medicine specialist and a pulmonologist, who testified that the scooter and the lift prescribed for the employee, although "assist[ing] his mobility and function," would not in any way be expected or intended to improve the employee's medical condition. At the hearing on the employee's motion, the employee filed in open court a second affidavit from the family-medicine specialist, who opined therein that the employee "should be approved for a scooter and a lift to put the scooter on his car to increase his mobility and decrease his dependence on others." The trial court entered an order granting the employee's motion, deeming the family-medicine specialist's "latest conclusion as more persuasive on the need for the scooter and lift."
The employer appeals, contending that neither the scooter nor the lift is an "other apparatus"[1] that is "reasonably necessary... as the result of an accident arising out of and in the course of the employment" under § 25-5-77(a), as construed by the Alabama Supreme Court in Ex parte City of Guntersville, 728 So.2d 611 (Ala.1998). We agree.
In Ex parte City of Guntersville, the injured employee, a city police officer, suffered in the line of duty a bullet wound in his back in a manner that rendered him a paraplegic and confined him to a wheelchair. 728 So.2d at 613. After a judgment had been entered awarding the injured employee benefits under the Act, the city sued the injured employee, seeking a judicial determination that the city was not obligated under § 25-5-77(a) to pay the injured employee the purchase price of a motor vehicle equipped with a wheelchair lift. Id. The trial court entered a judgment in favor of the injured employee, and this court affirmed that judgment (with two judges dissenting). City of Guntersville v. Bishop, 728 So.2d 605 (Ala.Civ.App. 1997).
The city then sought certiorari review of this court's judgment of affirmance. The Supreme Court reversed, holding that "a motor vehicle does not come within the term `other apparatus' as that term is used in § 25-5-77(a)." 728 So.2d at 616. In doing so, the Supreme Court rejected the proposition that the necessity of the motor vehicle "`for restoring [the injured employee's] mobility "to the highest possible level" of independent functioning,'" Id., was a sufficient basis for classifying that motor vehicle as an "other apparatus," reasoning as follows:
"If we held that the workers' compensation statute required reimbursement of a *1076 claimant's expenses where the sole purpose of those expenses was to enhance the claimant's independent functioning, we believe we would be dangerously disturbing the balance of interests that the Legislature built into the workers' compensation system.
"Our workers' compensation system was designed to provide limited, but guaranteed, benefits to employees injured on the job. In addition to those benefits, employers are required to pay for medical and rehabilitative treatment. However, we hold that those benefits do not include the purchase price of a motor vehicle. Put simply, a motor vehicle is not a device that, in and of itself, can serve to improve a disabled claimant's condition. Its only use is to improve the claimant's independent functioning. While human concern would cause one to wish that a disabled person would reach the maximum possible level of independent functioning, we believe that allowing reimbursement for such costs as are claimed in this case would stretch the workers' compensation statute beyond its intended meaning."
728 So.2d at 616-17 (emphasis added). Accord Osorio v. K & D Erectors, Inc., 882 So.2d 347, 350 (Ala.Civ.App.2003) (applying the holding in Ex parte City of Guntersville in holding that § 25-5-77(a) does not require an employer to provide attendant-care expenses to the family of a disabled employee for assisting in the employee's daily functioning when that care will not serve to improve employee's physical or mental condition).
In short, under the reasoning in Ex parte City of Guntersville, for an item or device prescribed for an injured employee, such as the scooter and the lift at issue in this case, to be deemed a covered "other apparatus" under § 25-5-77(a) so as to render an employer liable for the cost of that item or device, it must be shown that the purpose of the item or device is to improve the physical or mental condition of the injured employee. Although it is true, as the employee argues, that § 25-5-77(a) contains express directions that employers pay for the cost of certain specified items that might not, strictly speaking, "improve" particular medical conditions following a workplace injury (e.g., an artificial prosthetic limb does not "improve" a leg amputation), we are concerned here not with an item or device directly specified by the legislature but instead with the scope of the term "other apparatus" as construed by our Supreme Court (whose decisions, under § 12-3-16, Ala.Code 1975, bind this court). Moreover, whether it may be more burdensome for the employee, rather than the employer, to acquire a scooter or a lift (as the employee suggests) does not bear upon the legal question presented.
We acknowledge that under § 25-5-81(e)(2), Ala.Code 1975, appellate review of factual determinations (as opposed to legal determinations) made by circuit courts in cases arising under the Act is constrained by the principle that a judgment based upon such findings "shall not be reversed if ... supported by substantial evidence." However, in this case, the pulmonologist who has treated the employee (and to whom the family-medicine specialist deferred in his first affidavit) opined in his affidavit that the employee's need for a scooter and a lift is "unrelated to his workers' compensation injury" and is "secondary to his diabetes, morbid obesity, severe cardiac disease and history of smoking"; that evidence tends to support the employer's position that the scooter and the lift would not improve the employee's condition. Although the trial court disclaimed reliance upon the pulmonologist's opinion, relying instead upon the family-medicine specialist's second affidavit, that affidavit *1077 does not constitute substantial contrary evidence indicating that the scooter and the lift were intended to improve the employee's condition; rather, that affidavit simply states that the devices would "increase his mobility and decrease his dependence on others," benefits that do not, under the holding in Ex parte City of Guntersville, warrant imposing liability on the employer under § 25-5-77(a). Simply put, no substantial evidence supports the trial court's judgment so as to warrant affirmance of that judgment.
Based upon the foregoing facts and authorities, the trial court's judgment granting the employee's motion to compel the employer to pay for a scooter and a lift for the employee is reversed. The cause is remanded with instructions to deny the employee's motion.
REVERSED AND REMANDED WITH INSTRUCTIONS.
CRAWLEY, P.J., concurs.
THOMPSON and BRYAN, JJ., concur specially, with writings.
MURDOCK, J., concurs in the result, with writing.
THOMPSON, Judge, concurring specially.
In Ex parte City of Guntersville, 728 So.2d 611, 616 (Ala.1998), the parties stipulated that the requested motor vehicle, a van, merely enhanced the worker's independent functioning and that the motor vehicle had "no other medical purpose." Our supreme court held that because another subsection of § 25-5-77 provided for reimbursement of transportation costs, the more general language of subsection (a) of § 25-5-77 should not be interpreted as also providing for transportation costs. The court concluded that a motor vehicle is not an "other apparatus" under § 25-5-77(a). Ex parte City of Guntersville, supra. In so holding, our supreme court stated:
"Our workers' compensation system was designed to provide limited, but guaranteed, benefits to employees injured on the job. In addition to those benefits, employers are required to pay for medical and rehabilitative treatment. However, we hold that those benefits do not include the purchase price of a motor vehicle. Put simply, a motor vehicle is not a device that, in and of itself, can serve to improve a disabled claimant's condition. Its only use is to improve the claimant's independent functioning. While human concern would cause one to wish that a disabled person would reach the maximum possible level of independent functioning, we believe that allowing reimbursement for such costs as are claimed in this case would stretch the workers' compensation statute beyond its intended meaning. Consequently, we hold that a motor vehicle is not within the term `other apparatus' as that term is used in § 25-5-77(a), Ala. Code 1975. Because we make that determination, we need not consider whether a motor vehicle would be `reasonably necessary' in this case if it were such an apparatus."
Ex parte City of Guntersville, 728 So.2d at 616-17 (emphasis added).
I believe this court's interpretation of that precedent may focus too much on the language questioning whether the requested apparatus serves to "improve [the] disabled claimant's condition." Ex parte City of Guntersville, 728 So.2d at 616. Many items that do not improve a claimant's condition but only serve to alleviate or remedy some of the effects of that condition are compensable under the provisions of § 25-5-77(a). Section 25-5-77(a) specifically provides for an award to compensate *1078 a claimant for the costs of an artificial limb or crutches, items that do not necessarily serve to improve the claimant's condition. Further, under the relevant portion of § 25-5-77(a), an item such as a wheelchair, which is not specifically provided for in § 25-5-77(a), would clearly fall under the term "other apparatus"; a wheelchair also serves to improve the independent functioning of a claimant without impacting the claimant's underlying medical condition.
This court is, however, bound by the precedent established by the Supreme Court of Alabama. § 12-3-16, Ala.Code 1975; Farmers Ins. Exch. v. Raine, 905 So.2d 832, 835 (Ala.Civ.App.2004) ("Although the supreme court might choose to revisit this issue, this court is bound by precedent ..."), and a literal reading of the holding in Ex parte City of Guntersville, supra, mandates a reversal of the trial court's judgment in this case.
BRYAN, Judge, concurring specially.
I believe that the holding in Ex parte City of Guntersville, 728 So.2d 611 (Ala. 1998), hinged on the premise that the Alabama Workers' Compensation Act does not require "reimbursement of a claimant's expenses where the sole purpose of those expenses [is] to enhance the claimant's independent functioning." 728 So.2d at 616. Tellingly, our supreme court further stated: "While human concern would cause one to wish that a disabled person would reach the maximum possible level of independent functioning, we believe that allowing reimbursement for such costs as are claimed in this case would stretch the workers' compensation statute beyond its intended meaning." 728 So.2d at 616-17. In this case, the trial court found persuasive the family-medicine specialist's opinion that the scooter and the lift should be approved because they would "increase [the employee's] mobility and decrease his dependence on others." "Independent functioning" and "increase[d] ... mobility and decrease[d] ... dependence on others" are, arguably, one in the same.
Because, as I read it, Ex parte City of Guntersville precludes compensation for the expense of devices used solely to enhance an employee's independent functioning, and because the evidence in this case indicates that the scooter and the lift would only enhance the employee's independent functioning, I am constrained by the supreme court's decision in Ex parte City of Guntersville. See § 12-3-16, Ala. Code 1975 ("The decisions of the Supreme Court shall govern the holdings and decisions of the courts of appeals...."). Thus, I concur in the lead opinion reversing the trial court's judgment and remanding the case.[2]
MURDOCK, Judge, concurring in the result.
For the reasons explained below, I cannot agree with the rationale employed by the main opinion.
*1079 Section 25-5-77(a), Ala.Code 1975, provides that an employer shall be responsible for
"reasonably necessary medical and surgical treatment and attention, physical rehabilitation, medicine, medical and surgical supplies, crutches, artificial members, and other apparatus as the result of an accident arising out of and in the course of the employment."
It is apparent from even a casual review of the various items and services described in § 25-5-77(a) that their purpose is not always the improvement of the injured employee's condition. Rather, their purposes also include (a) preventing deterioration of the injured employee's condition and (b) relieving the injured employee of the adverse effects of his or her condition as it relates to the basic appearance or the basic functioning of the body.
For example, pain medicine typically does not improve the injured employee's underlying condition; as a general rule, pain medicine serves only the purpose of relieving an injured employee of the adverse effects of his or her condition. Similarly, "surgical treatment," other "medical... treatment," and "physical rehabilitation" sometimes may be prescribed simply to relieve an employee of pain resulting from his or her condition, or to prevent a deterioration of that condition. When an employee's injured leg has reached maximum medical improvement, the purpose of crutches is either (a) to prevent deterioration of the employee's condition or (b) to relieve the employee from the adverse effects of his or her condition in the sense of enabling the employee to engage in the basic bodily function of ambulation. When an employee has suffered a partially severed limb, an "artificial member" does not improve the condition of that portion of the limb that remains, but it does relieve the employee of the effect of the severance, if only in terms of the employee's appearance.
If all of these purposes are served by those items and services specifically listed by the legislature in § 25-5-77(a), there is no reason to think that the legislature intended a more restrictive reading of the catch-all category of "other apparatus[es]" also listed by the legislature in § 25-5-77(a). Perhaps the simplest example is that of a walking cane. When an injured employee has reached maximum medical improvement, the prescription of a walking cane typically serves the purpose of relieving the employee of the adverse effects of his or her condition insofar as a basic function of the body is concerned: ambulation. A cane, however, is not an apparatus specifically named by the legislature in § 25-5-77(a) and therefore would be compensable, if at all, only as an "other apparatus" under the statute. Under the approach accepted in the main opinion, however, employers no longer would be obligated to pay for walking canes for their injured employees who have reached maximum medical improvement because the purpose of those canes would not be to improve the employees' condition.
The same would be true of countless "other apparatus[es]" needed by and routinely purchased for injured employees who have reached maximum medical improvement, including, for example, walkers, wheelchairs, hearing aids, eyeglasses, dentures, colostomy apparatuses, back braces, braces for knees and elbows, and so-called "TENS units." Such devices are today and long have been routinely paid for by Alabama employers and their insurers pursuant to § 25-5-77(a) in cases in which the employee has no prospect for improvement in his or her condition and the device is prescribed only for the purpose of relieving the employee from the adverse effects of that condition.
*1080 The main opinion, of course, is correct that this court is bound by the precedents of our Supreme Court. See Ala.Code 1975, § 12-3-16. That would include our Supreme Court's opinion in Ex parte City of Guntersville, 728 So.2d 611 (Ala.1998). Correctly viewed, however, the Supreme Court's opinion in Ex parte City of Guntersville is not inconsistent with the aforesaid understanding of § 25-5-77(a).
The main opinion's interpretation of the opinion in Ex parte City of Guntersville depends primarily upon a statement made by the Supreme Court near the end of its analysis in that case, namely, that "a motor vehicle is not a device, in and of itself, that can serve to improve a disabled claimant's condition." 728 So.2d at 616. The main opinion draws the conclusion that this statement was intended by the Supreme Court to be the ratio decidendi of that case and future cases. In so doing, the main opinion gives much more import to this statement than I believe the Supreme Court reasonably could have or did intend. I come to this conclusion for three reasons: (1) the practical consequences of the main opinion's interpretation, as already discussed, (2) an examination of what was not at issue and was not addressed in the Supreme Court's opinion in Ex parte City of Guntersville, and (3) a careful examination of the entirety of what the Supreme Court did say in its analysis in Ex parte City of Guntersville.
For all that appears from the Supreme Court's opinion in Ex parte City of Guntersville, neither party raised the issue of compensability for an "other apparatus" whose purpose is to relieve the employee of the adverse effects of his or her condition with respect to the basic appearance or function of the body. The issue certainly was not expressly addressed in the Court's opinion. Moreover, consideration of that issue was not required under the facts of that case, which involved the reimbursement for the cost of a motor vehicle, not a device intended to facilitate a basic bodily function.[3]
On the other hand, a careful examination of the analysis that was provided by the Supreme Court counsels against placing too much weight on the Court's statement that the apparatus at issue in that case would not improve the employee's condition. The employee in Ex parte City of Guntersville argued that the motor vehicle in question was necessary as a means for transporting him to and from doctors' offices, rehabilitation clinics, etc. The Supreme Court thus began its analysis in Ex parte City of Guntersville with reasoning that, by itself, would appear to have been sufficient for the result reached:
"We note, however, that in § 25-5-77(f) the Legislature specifically provided for expenses associated with transportation to and from such offices....
"The [employer] argues, and we agree, that, because the Legislature specifically provided for transportation costs in § 25-5-77(f), it would not be logical to conclude that the Legislature intended for the more general language of § 25-5-77(a) to cover costs related to transportation as well."
728 So.2d at 616.
Despite the apparent sufficiency of the foregoing reasoning, the Supreme Court did proceed to address the fact that the parties had agreed that the vehicle in question was necessary "`for restoring [the employee's] mobility "to the highest possible level" of independent functioning.'" *1081 728 So.2d at 616 (emphasis added). The Court declined to accept that fact as a basis for recovery, explaining that to do so "would be dangerously disturbing the balance of interests that the Legislature built into the workers' compensation system." Id. The Court's analysis, however, contains no consideration of whether an employee could be compensated for the cost of an apparatus if that apparatus were necessary to enable the employee's body to perform at a basic level.
Finally, only after rejecting the "transportation" purpose and the "highest-possible-level-of-independent-functioning" purpose did the Supreme Court remark that the motor vehicle was not a device that would "serve to improve a disabled claimant's condition." 728 So.2d at 616. Again, however, the Supreme Court coupled this remark with a statement that requiring reimbursement for apparatuses intended to help disabled persons "reach the maximum possible level of independent functioning" would extend § 25-5-77(a) beyond its intended meaning. 728 So.2d at 617 (emphasis added). Moreover, nowhere does the Supreme Court say that only when an apparatus serves the purpose of improving an employee's condition can it be considered to fall within the intended meaning of "other apparatus" in § 25-5-77(a).
The essential difference between the motor vehicle in Ex parte City of Guntersville and the numerous devices mentioned near the outset of this writingdevices that, again, are routinely approved and paid for by employers and insurers on a daily basis in Alabamais that the latter devices aid the body in its basic appearance or functions. The motor vehicle at issue in Ex parte City of Guntersville, however, had as its sole purpose providing the employee with greater independence or convenience in accessing or interacting with his community, or "society." This distinction is fully consistent with both the result reached in and a proper reading of the Court's opinion in Ex parte City of Guntersville. Further, this distinction is consistent with the holdings of cases from other jurisdictions. Compare, e.g., Cheyenne County Nursing Home v. Industrial Claim Appeals Office of the State of Colorado, 892 P.2d 443 (Colo.Ct.App.1995); Camp v. Deseret Mut. Benefit Ass'n, 589 P.2d 780 (Utah 1979); Bogue v. SDI Corp., 931 P.2d 477 (Colo.Ct.App.1996); Phillips Petroleum Co. v. Carter, 914 P.2d 677 (Okla.Ct.App.1995); Akins v. Lead Hill School Dist., (No. CA00-1038, April 18, 2001) (Ark.Ct.App.2001) (not published in S.W.3d).
Furthermore, this distinction is consistent with the fact that § 25-5-77(a) lists "other apparatus[es]" in a list that includes crutches and prostheses. "[W]here general words or phrases ... follow or precede a specific list of classes of persons or things, the general word or phrase is interpreted to be of the same nature or class as those named in the specific list." Ex parte McLeod, 718 So.2d 682, 685 (Ala.1997) (explaining the rule of ejusdem generis). See also, e.g., Weakland v. Toledo Eng'g Co., 467 Mich. 344, 656 N.W.2d 175 (2003) (discussing the differences between a van and other appliances, and noting that the use of the term "other" in the statute, together with the statute's listing of specific adaptive aids such as crutches, hearing aids, dentures, and eyeglasses, evidenced a legislative intent to mandate that an employer supply devices of a like kind).[4]
*1082 The above-described understanding of what the legislature must have intended by § 25-5-77(a) and what our Supreme Court intended in Ex parte City of Guntersville comports with the fundamental purposes of the Workers' Compensation Act. It is an understanding that extends no further, and is entirely consistent with, the understanding of the statute already held by employers, insurers, employees, attorneys, and judges of this state. This understanding has been and continues to be demonstrated throughout this state on a daily basis as employers and insurers, both before and since Ex parte City of Guntersville, routinely have purchased and continue routinely to purchase for injured employeesand courts routinely have entered and continue to enter orders requiring or contemplating the purchase ofa wide variety of "other apparatus[es]" not intended to improve employees' conditions.
Of course, the fact that an apparatus is intended to provide relief to the employee from the adverse effects of his or her condition with regard to the basic functioning of the body does not alone entitle the employee to reimbursement for the cost of such an apparatus. Section 25-5-77(a) begins with the qualifier that the items to be paid for by employers must be "reasonably necessary." Thus, under the facts presented in the present case, the question becomes whether the apparatuses at issue were shown by the employee (a) to be reasonably necessary and (b) to relieve the employee of the adverse effects of his condition insofar as the basic appearance or functioning of his body.[5] Based on the record before us, I agree that we must answer that question in the negative.
The apparatuses for which the employee seeks to be compensated are described in his motion as "a scooter and a lift." The purpose of the lift was to attach the scooter to a motor vehicle. The employee's treating physicians, a family-medicine specialist and a pulmonologist, testified by affidavit that the scooter would "assist [the employee's] mobility and function." Before the trial court, the employee took the position, supported by a second affidavit of the family-medicine specialist, that the employee "should be approved for a scooter and a lift to put the scooter on his car to increase his mobility and decrease his dependence on others." Thus, we do not have before us a case in which the employee demonstrated that the requested apparatuses were reasonably necessary to relieve him of the effect of his condition insofar as the basic appearance or functioning of his body. Instead, for all that appears in the record in this case, the employee sought the apparatuses to enhance his independence and convenience in accessing and interacting with society. I therefore concur with the result reached by the main opinion in this case.
NOTES
[1] We note that the term "other apparatus" is not statutorily defined in the Act.
[2] As Judge Murdock in his special writing aptly notes, many devices that do not necessarily improve an injured employee's condition, e.g., wheelchairs, canes, hearing aids, braces, and walkers, are routinely paid for by employers pursuant to § 25-5-77(a), Ala.Code 1975. Judge Thompson in his special writing also aptly notes that a wheelchair may improve an employee's independent functioning without affecting the employee's underlying condition. To the extent that it may be argued that the holding in Ex parte City of Guntersville forecloses an employer's liability for common and often essential devices that merely improve an employee's independent functioning, I am deeply concerned about the possible applications of that holding. I therefore urge the supreme court to clarify its holding in Ex parte City of Guntersville.
[3] Similarly, it does not appear in Ex parte City of Guntersville that the parties argued or that the Court considered the compensability of an apparatus whose purpose is to prevent deterioration of an employee's condition.
[4] The distinction between an apparatus designed to assist the body to appear as intended or to perform a basic bodily function, rather than to assist the body in accessing or interacting with society (i.e., achieving a "`highe[r] possible level' of independent functioning," 728 So.2d at 616), arguably would support and explain the following potential results: (1) the compensability of a prosthetic hand, but not of a computer designed to function solely on voice commands, (2) the compensability of a walking cane, but not of a motor vehicle (consistent with Ex parte City of Guntersville), (3) the compensability of a hearing aid, but not of an amplifier for an external device, such as an intercom system, and (4) the compensability of eyeglasses, but not of a larger television screen.
[5] The record in the present case contains no indication that the scooter and the lift at issue had as their purpose either the improvement of the employee's condition or the prevention of deterioration of that condition.