BOLIN, Justice.
In November 2005, William Earl Mitchell filed a motion in the trial court asking the court to award him a motorized scooter and a lift to put the scooter on his vehicle under a previous workers’ compensation judgment that left open the issue of future medical benefits. The trial court granted Mitchell’s motion. Relying on this Court’s decision in Ex parte City of Guntersville, 728 So.2d 611 (Ala.1998), the Court of Civil Appeals reversed the judgment of the trial court awarding Mitchell the scooter and the lift. See Perry & Williams, Inc. v. Mitchell, 989 So.2d 1074 (Ala.Civ.App.2006). This Court held in Ex parte City of Guntersville that a van was not a device *1085 that served to improve a disabled employee’s condition and, therefore, did not come within the meaning of the term “other apparatus” under § 25-5-77(a), Ala.Code 1975. We granted Mitchell’s petition for a writ of certiorari to determine whether this Court’s holding in Ex parte City of Guntersville should be clarified or overruled.

Factual and Procedural Background

On May 11, 1999, the Montgomery Circuit Court entered a judgment finding that Mitchell had suffered a compensable injury in July 1996, caused by inhaling toxic fumes during the course of his employment with Perry & Williams, Inc. The trial court awarded Mitchell workers’ compensation benefits in accordance with the Workers’ Compensation Act, § 25-5-1 et seq., Ala.Code 1975 (“the Act”). The trial court specified in its judgment that Mitchell’s right to any future medical benefits would remain open pursuant to the Act. See § 25-5-77, Ala.Code 1975.
On November 10, 2005, Mitchell moved the trial court to enforce the medical-benefits provision of the May 1999 workers’ compensation judgment, alleging that his medical condition had deteriorated, that he was in “need of a scooter and a lift for the scooter for mobility,” and that Perry & Williams should pay for the expenses associated with the purchase of the scooter and the lift.
Perry & Williams responded to Mitchell’s motion, disputing that the scooter and the lift were properly payable medical benefits under § 25-5-77(a), Ala.Code 1975, which mandates that the employer provide “reasonably necessary medical and surgical treatment and attention, physical rehabilitation, medicine, medical and surgical supplies, crutches, artificial members, and other apparatus as the result of an accident arising out of and in the course of the employment .... ” Perry & Williams argued that based on this Court’s holding in Ex parte City of Guntersville, supra, the scooter and the lift did not constitute “other apparatus” so as to be a compensable medical expense under § 25-5-77(a), because the scooter and the lift were merely to assist Mitchell with his mobility and did not improve his medical condition. Perry & Williams also argued that Mitchell’s alleged need for a scooter and a lift was not related to his workers’ compensation injury, but was related to other medical conditions from which Mitchell also suffered. In support of its position, Perry & Williams presented the affidavits of Mitchell’s treating physicians, Dr. Mont F. Highley III and Dr. William P. Saliski, Jr. Dr. Highley stated as follows in his affidavit:
“I am a licensed physician practicing in the field of family medicine. In my position as a physician, I have had the opportunity to treat William Earl Mitchell, the plaintiff in the above styled action.
“In my professional opinion, Mr. Mitchell’s medical condition is such that I believe he would benefit from a scooter and lift. It is further my opinion that the scooter and lift would assist his mobility and function, but would not be expected or intended to improve his medical condition.
“As for defining the specific conditions that have caused or contributed to Mr. Mitchell’s need for a scooter and lift, I defer my opinion to that of Dr. William Saliski, to whom I have referred Mr. Mitchell for further assessment and treatment.”
Dr. Saliski testified as follows in his affidavit:
“I am a licensed physician practicing in the field of pulmonology. In my posi *1086 tion as a physician, I have had the opportunity to treat William Earl Mitchell, the plaintiff in the above styled action.
“I am aware that Mr. Mitchell is interested in obtaining a scooter and lift. In my professional opinion, any benefit that Mr. Mitchell would gain from a scooter and lift would be to assist his mobility and function. The scooter and lift would not in any way improve his medical condition.
“It is my professional opinion that Mr. Mitchell’s need for a scooter and lift is unrelated to his workers’ compensation injury; his need for a scooter and lift was not as the result of his workers’ compensation injury and the injury neither caused nor contributed to his perceived need for those items. Instead, it is my opinion that any need Mr. Mitchell has for a scooter and lift is secondary to his diabetes, morbid obesity, severe cardiac disease, and history of smoking.”
Mitchell responded to Perry & Williams’s response by submitting on December 15, 2005, a second affidavit of Dr. Highley, which addressed the issue of causation. Dr. Highley testified in his second affidavit as follows:
“Mr. Mitchell has been disabled for many years because of pulmonary fibrosis. His lung condition is related to an on-the-job exposure in my opinion.
“He has recently developed severe aortic stenosis. He initially was approved for a scooter to help him with his mobility. However, the development of the aortic stenosis and the issue of the ideology of his disability became clouded. However, it is my feeling that the patient has sufficient disability on the basis of his lung disease to warrant a scooter. I think the fact that he has aortic stenosis is probably unrelated, but his lungs are unquestionably severely diseased to the point where he is on oxygen on a constant basis. It is my opinion that he should be approved for a scooter and a lift to put the scooter on his car to increase his mobility and decrease his dependence on others.”
On January 13, 2006, the trial court entered an order requiring Perry & Williams to provide Mitchell with the requested scooter and lift, finding that they were “other apparatus” covered under § 25-5-77(a). The trial court’s order reads, in part, as follows:
“The question at bar is whether the requested ‘scooter and lift’ are required under § 25-5-77(a), Ala.Code (1975), which in pertinent part states, an employer is responsible for paying only those medical benefits that are associated with,
“ ‘reasonably necessary medical ... treatment and attention, physical rehabilitation ... medical ... supplies, crutches, artificial members, and other apparatus as the result of an accident arising out of and in the course of the employment.’
“The plaintiff contends that the scooter and lift are covered within the broad mandate of the statute.
“Two treating physicians have provided affidavits in this action. Dr. Saliski has provided an affidavit to the defendant signed December 8, 2005. Dr. Highley has provided affidavits to both the plaintiff and defendant. Dr. High-ley’s affidavit to the defendant is signed December 13, 2005. Dr. Highley’s affidavit to the plaintiff is signed December 15, 2005.
“Dr. Saliski, in his affidavit to the defendant states,
“ ‘In my professional opinion, any benefit that Mr. Mitchell would gain from a scooter and lift would be to assist his mobility and function. The scoot *1087 er and lift would not in any way improve his medical condition.’
“Dr. Highley in his affidavit to the defendant, states,
“ ‘In my professional opinion, Mr. Mitchell’s medical condition is such that I believe he would benefit from a scooter and lift. It is further my opinion that the scooter and lift would assist his mobility and function, but would not be expected or intended to improve his medical condition.’
“Dr. Highley in his affidavit to the plaintiff states,
“‘Mr. Mitchell has been disabled for many years because of pulmonary fibrosis. His lung condition is related to an on-the-job exposure in my opinion.
“ ‘He has recently developed severe aortic stenosis. He initially was approved for a scooter to help him with his mobility. However, the development of the aortic stenosis and the issue of the ideology of his disability became clouded. However, it is my feeling that the patient has sufficient disability on the basis of his lung disease to warrant a scooter.’
“While Dr. Highley’s and Dr. Saliski’s affidavits for the defendant are consistent and parallel, however, Dr. Highley’s affidavits for the plaintiff state a distinct opinion from his and Dr. Saliski’s affidavits for the defendant. It was represented in open court by plaintiffs attorney that Dr. Highley has been plaintiffs long-time treating physician and would have more knowledge of plaintiffs condition than Dr. Saliski, who only saw plaintiff one time for approximately one and one-half hour. The defendant does not dispute this representation. While it is no question that both doctors are credible, however, it is reasonable to accept the long term treating physician’s latest conclusion as more persuasive on the need for the scooter and lift. Dr. Highley’s latest conclusion is that a scooter is warranted. Thus, if the scooter is warranted, so is the lift.”
Perry & Williams argued on appeal to the Court of Civil Appeals that the scooter and the lift were not “other apparatus” that was “reasonably necessary ... as the result of an accident arising out of and in the course of the employment” pursuant to § 25-5-77(a), as that provision was construed by this Court in Ex parte City of Guntersville, supra.
In Ex parte City of Guntersville, a police officer suffered a gunshot wound to his back during the course of his employment with the City of Guntersville. The officer was rendered a paraplegic and was confined to a wheelchair as the result of the gunshot wound. After a judgment had been entered awarding the officer workers’ compensation benefits under the Act, the City sued the officer, seeking a determination that the City was not obligated under § 25-5-77(a) to pay for a van equipped with a wheelchair lift. The trial court entered a judgment in favor of the officer, which the Court of Civil Appeals affirmed. See City of Guntersville v. Bishop, 728 So.2d 605 (Ala.Civ.App.1997).
We granted the City’s petition for a writ of certiorari. In reversing the judgment of the Court of Civil Appeals, this Court concluded that “because the Legislature specifically provided for transportation costs in § 25-5-77(f), [Ala.Code 1975,] it would not be logical to conclude that the Legislature intended for the more general language of § 25-5-77(a) to cover costs related to transportation as well.” 728 So.2d at 616.
This Court went on to conclude that the van did not fall within the term “other *1088 apparatus” as that term is used in § 25-5-77(a). This Court reasoned:
“The parties also agree that the van is necessary ‘for restoring [Bishop’s] mobility “to the highest possible level” of independent functioning.’ It is important to note that the parties further stipulated that ‘[o]ther than as stated, there are no other medical purposes for the van.’ If we held that the workers’ compensation statute required reimbursement of a claimant’s expenses where the sole purpose of those expenses was to enhance the claimant’s independent functioning, we believe we would be dangerously disturbing the balance of interests that the Legislature built into the workers’ compensation system.
“Our workers’ compensation system was designed to provide limited, but guaranteed, benefits to employees injured on the job. In addition to those benefits, employers are required to pay for medical and rehabilitative treatment. However, we hold that those benefits do not include the purchase price of a motor vehicle. Put simply, a motor vehicle is not a device that, in and of itself, can serve to improve a disabled claimant’s condition. Its only use is to improve the claimant’s independent functioning. While human concern would cause one to wish that a disabled person would reach the maximum possible level of independent functioning, we believe that allowing reimbursement for such costs as are claimed in this case would stretch the workers’ compensation statute beyond its intended meaning.”
728 So.2d at 616-17.
Judge Pittman, writing for the Court of Civil Appeals in this case, stated in the main opinion:
“[UJnder the reasoning in Ex parte City of Guntersville, for an item or device prescribed for an injured employee, such as the scooter and the lift at issue in this case, to be deemed a covered ‘other apparatus’ under § 25-5-77(a) so as to render an employer liable for the cost of that item or device, it must be shown that the purpose of the item or device is to improve the physical or mental condition of the injured employee.”
Mitchell, 989 So.2d at 1076. The Court of Civil Appeals then reversed the trial court’s judgment awarding Mitchell the scooter and the lift, finding that no substantial evidence existed that indicated that the scooter and the lift were intended to improve Mitchell’s physical condition. Mitchell, 989 So.2d at 1077.
Judge Thompson concurred specially in the court’s decision, noting that the interpretation of Ex parte City of Guntersville in the main opinion may have focused too closely on the language in Guntersville questioning whether the requested apparatus served to improve the disabled employee’s medical condition. Judge Thompson noted that many items that do not improve an employee’s condition but that merely serve to alleviate or remedy the effects of that condition are compensable under § 25-5-77(a), including those specifically mentioned in § 25-5-77(a), such as crutches and artificial limbs, and those not specifically mentioned, such as a wheelchair. Mitchell, supra.
Judge Bryan also concurred specially; he expressed concern that the holding in Ex parte City of Guntersville could be applied to foreclose an employer’s liability for common and essential devices such as wheelchairs, canes, hearing aids, braces, and walkers, which merely serve to improve an employee’s independent functioning and do not improve the employee’s condition. Mitchell, supra.
*1089 Justice Murdock[1] concurred in the result in Mitchell, reasoning that the main opinion gave much more import to this Court’s statement in Ex parte City of Guntersville — that the van was not a device that served to improve the employee’s medical condition — than this Court reasonably could have given it. Justice Murdock noted that the purpose of the items and services provided for in § 25-5-77(a) was not only to improve the employee’s condition, but also (1) to prevent the deterioration of the employee’s condition and (2) to relieve the employee of the adverse effects of the employee’s condition as it related to the basic appearance or the basic functioning of the body. Justice Murdock, using a cane as an example, explained that a cane does not serve to improve an employee’s condition but serves only to relieve the employee of the adverse effect of his condition as it related to basic functioning, i.e., walking. He pointed out that a cane is not an item specifically mentioned in § 25-5-77(a) and thus would be compensable only as an “other apparatus.” However, Justice Murdock concluded that under the approach adopted by the Court of Civil Appeals’ opinion, employers would no longer be required to provide canes to injured employees because a cane does not serve to improve an employee’s condition. Mitchell, supra.
Justice Murdock offered in his special writing a distinction between the van at issue in Ex parte Guntersville and the more common devices such as walkers, wheelchairs, hearing aids, back braces, and the like, routinely provided by employers pursuant to § 25-5-77(a). He stated that the latter, more common, devices aid the body in its basic appearance or function, whereas the sole purpose of the van was to provide the employee with greater independence or convenience in interacting with society. Mitchell, supra. Justice Murdock then framed the dispositive issue as follows: “[Wjhether the [scooter and the lift] at issue were shown by [Mitchell] (a) to be reasonably necessary and (b) to relieve [Mitchell] of the adverse effects of his condition insofar as the basic appearance or functioning of his body.” Mitchell, 989 So.2d at 1082. Justice Murdock concluded that the evidence in the record indicated that Mitchell sought the scooter and the lift for the purpose of enhancing his independence and convenience in accessing and interacting with society rather than for relieving him of the effect of his condition insofar as it relates to the body’s basic appearance or function. Mitchell, supra.

Standard of Review

The standard of review on a petition for a writ of certiorari is as follows:
“ ‘On certiorari review, this Court accords no presumption of correctness to the legal conclusions of the intermediate appellate court. Therefore, we must apply de novo the standard of review that was applicable in the Court of Civil Appeals.’ Ex parte Toyota Motor Corp., 684 So.2d 132, 135 (Ala.1996). The Court of Civil Appeals, in turn, is bound by Ala.Code 1975, § 25-5-[81](e), which provides that legal issues are to be reviewed de novo and requires that the judgment of the trial court be affirmed if its factual findings are supported by substantial evidence.”
Ex parte Fort James Operating Co., 895 So.2d 294, 296 (Ala.2004). Further, because the trial court received no ore tenus evidence and its decision was based on the *1090 affidavits of Mitchell’s treating physicians, no presumption of correctness attaches to the trial court’s judgment, and appellate review is de novo. Hacker v. Carlisle, 388 So.2d 947 (Ala.1980).

Discussion

Mitchell asks this Court to overrule, or at least to clarify, its decision in Ex parte City of Guntersville, to the extent that that decision sets forth an overly restrictive standard for determining what constitutes “other apparatus” under § 25-5-77(a), Ala.Code 1975. Section 25-5-77(a) provides, in relevant part, that an employer shall pay for “reasonably necessary medical and surgical treatment and attention, physical rehabilitation, medicine, medical and surgical supplies, crutches, artificial members, and other apparatus as the result of an accident arising out of and in the course of the employment.” The phrase “other apparatus” is not defined by the Act; therefore, it is subject to construction.
“ ‘The cardinal rule of statutory interpretation is to determine and give effect to the intent of the legislature as manifested in the language of the statute. Absent a clearly expressed legislative intent to the contrary, the language of the statute is conclusive. Words must be given their natural, ordinary, commonly understood meaning, and where plain language is used, the court is bound to interpret that language to mean exactly what it says.’
“... ‘Courts must liberally construe the workers’ compensation law “to effectuate its beneficent purposes,” although such a construction must be one that the language of the statute “fairly and reasonably” supports.’ ”
Ex parte Weaver, 871 So.2d 820, 823-24 (Ala.2003) (citations omitted). This Court in Ex parte City of Guntersville discussed the history and underlying policy of the Act:
“ ‘[T]he necessity for workers’ compensation legislation arose out of the coincidence of a sharp increase in industrial accidents attending the rise of the factory system and a simultaneous decrease in the employee’s common-law remedies for his or her injuries.’ 1 Arthur Larson & Lex K. Larson, Larson’s Workers’ Compensation Law, § 4.00 (1997). In an effort to meet changing societal needs more efficiently than they were being met by the common law and early statutory law, the states began enacting workers’ compensation statutes, in their modern form, in the first part of this century. Larson, § 5.30. In doing so, the states created a new system that was delicately balanced between the interests of employees and the interests of employers. Under this new system, the employer is automatically responsible for paying medical and disability benefits to employees who are injured on the job. ‘[T]he employee and his or her dependents, in exchange for ... modest but assured benefits, give up their common-law right to sue the employer for damages for any injury covered by the act....’ Larson, § 1.10(e). ‘A correctly balanced underlying concept of the nature of workers’ compensation is indispensable to an understanding of current cases and to a proper drafting and interpretation of compensation acts.’ Larson, § 1.20. The Alabama Legislature incorporated that balanced concept in our workers’ compensation statute. Understanding that balance is, of course, a constant challenge for courts. In deciding the issue at hand, we must determine how to best effectuate the intended aims of the compensation statute while maintaining the balance upon which it was based.”
*1091 728 So.2d at 615-16. Therefore, in setting forth the appropriate standard to be used in determining what constitutes “other apparatus” under § 25-5-77(a), this Court must strike a balance between the competing interests of employees and employers that is the basis of our workers’ compensation system.
As Justice Murdock aptly pointed out in his special concurrence to the Court of Civil Appeals’ opinion Mitchell, a casual reading of § 25-5-77(a) reveals that not all the apparatus and services specifically mentioned there have as their sole purpose the improvement of an employee’s condition. They may also serve (a) to prevent the deterioration of the employee’s condition and (b) to relieve the employee of the adverse effects of his condition as it relates to “the basic appearance or the basic functioning of [the] body.” Mitchell, 989 So.2d at 1082 (Murdock, J., concurring in the result). For example, “medical and surgical treatment,” in addition to improving an employee’s condition, may also serve to prevent the further deterioration of the employee’s condition or restore the employee to a level of basic functioning. “Physical rehabilitation” may serve to improve an employee’s condition, but it may also be prescribed for the purpose of preventing the further deterioration of the employee’s condition or restoring the employee to a level of basic functioning. “Crutches” do not improve the condition of an employee’s injured leg, but they serve to prevent the further deterioration of the employee’s leg and also help restore the employee to a level of basic function, i.e., ambulation. “Artificial members” cannot restore or mend a employee’s severed limb; however, they would restore the employee’s appearance as it relates to the severed limb, and may, in some cases, return the employee to a level of basic functioning. The same could be said for many other items not specifically mentioned in § 25-5-77(a). For example items such as wheelchairs, walkers, canes, hearing aids, eyeglasses, dentures, and braces (such as back, knee, and elbow braces) do not necessarily serve to improve an employee’s condition but, nonetheless, are routinely provided to injured employees under § 25-5-77(a). A narrow interpretation of the phrase “other apparatus” could conceivably foreclose an employer’s liability for these common items, which are routinely provided to the employee pursuant to § 25-5-77(a).
The ejusdem generis rule of statutory construction provides that where general words or phrases follow or precede a specific list of classes of persons or things, the general word or phrase is interpreted to be of the same nature or class as those named in the specific list. Ex parte McLeod, 718 So.2d 682 (Ala.1997). Applying the rule of ejusdem generis to § 25-5-77(a), we must interpret the phrase “other apparatus” to be in the same nature or class as “medical and surgical treatment,” “physical rehabilitation,” “crutches,” and “artificial members.” As discussed above, those items and services do not have as their sole purpose the improvement of an employee’s condition. As noted by Justice Murdock, they may also act to prevent the deterioration of the employee’s condition, but they serve to relieve the employee of the adverse effects of his condition as it relates to the basic appearance or basic functioning of his body. Therefore, the phrase “other apparatus” must not be construed to include only those items that improve an employee’s condition; rather, it must be construed to also include like items that also serve to prevent the deterioration of the employee’s condition and to reheve the employee of the effects of his condition as it relates to the basic appearance or functioning of the employee’s body.
*1092 In Ex parte City of Guntersville this Court was asked to consider the narrow issue whether a wheelchair-accessible van fell within the phrase “other apparatus” as that phrase is used in § 25-5-77(a). This Court concluded that the legislature had specifically provided for transportation costs in § 25 — 5—77(f); therefore, it reasoned, the legislature did not intend for the more general language of § 25-5-77(a) to cover costs related to transportation. Ex parte City of Guntersville, supra. In dicta, this Court went on to state that the payment of medical benefits pursuant to § 25-5-77(a) did not include the purchase price of a van because a van is not a device that can serve to improve a disabled employee’s condition; its only use is to improve the employee’s independent functioning. Id. We reject as too restrictive and inconsistent with legislative intent the dicta in Ex parte City of Guntersvüle, to the extent that it defines the phrase “other apparatus” to include only those items that serve to improve an employee’s condition.
In this case, this Court is asked to clarify the standard to be used in determining what constitutes an “other apparatus” under § 25-5-77(a). We do so by incorporating the principles discussed above into a functional standard that is consistent with legislative intent and that strikes a balance between the competing interests of employees and employers. Thus, in order to constitute “other apparatus” and be compensable as a medical benefit under § 25-5-77(a), the item must be: (a) reasonably necessary and (b) intended to improve the injured employee’s condition, to prevent the further deterioration of the employee’s condition, or to relieve the employee from the effect of his condition by restoring the employee to a basic level of appearance or functioning. The determination of what constitutes a reasonably necessary “other apparatus” should be made on a case-by-case basis. For example, a wheelchair may restore an otherwise healthy employee to a level of basic functioning; however, an employee who suffers from a condition that, in addition to requiring a wheelchair, has also weakened the employee’s upper body to the point that the employee cannot operate a wheelchair, may require a scooter to return that employee to a similar level of basic functioning.
We now turn specifically to Mitchell’s request for a scooter and a lift. The function of the lift is solely to facilitate access to transportation in connection with a motor vehicle. As stated above, the basis for this Court’s holding in Ex parte City of Guntersville was that the legislature had specifically provided for transportation costs in 25 — 5—77(f), and a lift can serve no function other than as an attachment to a mode of transportation to facilitate the injured employee’s transportation. The lift itself cannot improve Mitchell’s condition, prevent the further deterioration of his condition, or relieve him from the effect of his condition by restoring him to a basic level of appearance or functioning. Therefore, we conclude as a matter of law that a lift cannot, pursuant to the standard announced today, be considered “other apparatus” under § 25-5-77(a). Therefore, we affirm the judgment of the Court of Civil Appeals as to the lift. However, a scooter could be considered “other apparatus” reasonably necessary to return Mitchell to a level of basic functioning pursuant to the new standard and could therefore be compensable under § 25-5-77(a). Accordingly, we reverse the judgment of the Court of Civil Appeals as to the scooter and remand the case to that court for it in turn to remand the case for the trial court to conduct further proceedings to determine whether Mitchell is entitled to a scooter, as “other apparatus,” *1093 pursuant to the standard set forth above. Because this Court has announced a new standard in this case, the trial court is free to exercise its discretion and conduct further proceedings, including taking additional evidence, in making its determination.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED WITH INSTRUCTIONS.
COBB, C.J., and SEE, LYONS, WOODALL, STUART, SMITH, and PARKER, JJ., concur.
MURDOCK, J., recuses himself.

. Justice Murdock was a member of the Alabama Court of Civil Appeals when that court decided this case.