MOORE, Judge.
The Alabama Forest Products Industry Workmen’s Compensation Self-Insurers’ Fund (“Alabama Forest Products”) appeals from a judgment of the Marengo Circuit Court (“the trial court”) ordering it to pay certain attendant-care expenses for Amos Harris. We affirm.

Facts and Procedural History

The facts essential to this appeal appear to be largely undisputed. In 1990, Harris suffered a work-related accident resulting in severe injuries to his pelvis and right lower extremity. On November 1,1991, Dr. Stuart Stephenson, an orthopedic surgeon and Harris’s authorized treating physician, wrote a letter stating that, due to his ambulatory difficulties, it was “imperative that [Harris] have help at home during his recovery phase.” Thereafter, Alabama Forest Products, who insured Harris’s employer, paid various members of Harris’s family a monthly stipend to assist Harris as instructed by Dr. Stephenson.
Harris reached maximum medical improvement in 1992 and settled his workmen’s compensation claim against his employer in 1998. Pursuant to the terms of the settlement, which was approved by a judgment of the trial court, the employer remained “liable and shall pay any reasonable and necessary medical expenses on account of [Harris’s] injuries as are required by the workmen’s compensation laws of Alabama.” As before the settlement, Alabama Forest Products, on behalf of the employer, continued to pay a monthly sum to various members of Harris’s family for attending to Harris for the next nearly 20 years.
*923 In the fall of 2011, Harris sent notice to the third-party administrator for Alabama Forest Products that he wanted Anthony Watkins, his future son-in-law, to replace Shaquita Harris, his daughter, as his designated caregiver. After complying with that request, the third-party administrator sent several payments to Watkins at Harris’s mailing address. However, the third-party administrator later discovered that Watkins was employed full-time out of the town where Harris lived. On June 22, 2012, the third-party administrator informed Harris that it was terminating further payments for attendant care. Harris thereafter filed a declaratory-judgment action requesting that the trial court enforce the settlement by requiring Alabama Forest Products to reinstate the payments.[1]
At trial on February 21, 2013, the trial court received into evidence the deposition of Dr. Stephenson, who testified that, due to his work-related injuries, Harris is permanently and severely limited in lifting, range of motion, bending, stooping, squatting, climbing, and walking and that those limitations preclude Harris from independently performing ordinary activities of daily living. Dr. Stephenson maintained that, although Harris has long since reached maximum medical improvement, Harris still requires assistance with activities of daily living and in-home physical-therapy exercises and that he will require such attendant care for the rest of his life. Dr. Stephenson agreed that the attendant care provided by Harris’s family members in the past had not improved Harris’s underlying physical condition and that further attendant care would not improve Harris’s condition in the future, but, 'he testified, the attendant care, which he considered to be “medical attention” and “physical rehabilitation,” had allowed and would continue: to allow Harris to “maintain his function” and “prevent the deterioration of his condition.” Dr. "Stephenson opined that, without the attendant care provided by Harris’s family members, Harris would otherwise have to be admitted into a skilled-nursing facility or else become bedridden.
The trial court also heard testimony from Harris; his wife, Willie Harris; and his daughter, Felicia Moore. That testimony established that, despite using strong narcotic medication prescribed by Dr. Stephenson, Harris continues to experience pain from the waist down and a substantial loss of the use of his right lower extremity. Harris uses a wheelchair and eán walk for short distances only with the aid of a walker. He requires assistance to rise from his bed, to use the toilet, to get into and out of his bath, to negotiate steps, and. to put.on his clothes. He cannot prepare his own meals. At times, Harris, who was 71 years old at the time of the trial, has to be reminded to take his medication. Harris also depends on family members to bend and exercise his right leg, to rub medication on his injured areas, and to -take precautions against bedsores, all tasks that Dr. Stephenson recommends and that ordinarily would be performed by nurses or nursing assistants at a cost.
At the time of the trial, Harris was living in his home with his son, Amos Harris, Jr. (“Amos Jr.”). Willie resides next door in a mobile home approximately IQ yards away, which she shares with her sister and her disabled mother. Each morning, Willie goes to Harris’s home and prepares breakfast for Harris. Sometimes, Amos Jr. helps Harris get up from his bed, which is a hospital bed with rails, *924 in the morning, but mainly Willie assists Harris with getting out . of bed and putting on his clothes. Harris feeds himself and then gets in a recliner, where he ordinarily watches television all day by himself, although he sometimes drives Willie to the grocery store and to pay his bills while he stays in his truck. 'Willie routinely returns to Harris’s mobile home and prepares Harris’s other daily meals. If Harris requires further assistance during the day, such as to go to the bathroom or to exercise his legs, he contacts Willie via telephone up until 9:30 at night. Felicia, a former certified nursing assistant, and Shaquita also provide intermittent care for Harris and transport him to- his doctor’s visits. After he returns from his job, Amos Jr. helps Harris until Harris goes to bed. No one spends the entire day with Harris, and he is often alone, a fact that surprised Dr. Stephenson.
After the trial, the trial court entered a judgment on April 8, 2013, ordering Alabama Forest Products to pay for the attendant-care expenses provided by Harris’s family members from the date they had been discontinued and into the future. On April 24, 2013, Alabama Forest Products filed a postjudgment motion; that motion was denied by-operation of law on July 23, 2013. See Rule 59.1, Ala, R. Civ. P. On August 28, 2013, Alabama Forest Products filed its notice of appeal.

Discussion

On appeal, Alabama Forest Products argues that -the trial court erred in ordering it to continue to pay Harris’s family members for providing, him attendant care; Alabama Forest Products argues primarily that, as a matter of law, an injured employee has no right to payment for attendant care and, secondarily, that, under the facts of this case; the trial court erred in ordering such payments. We address each .argument in turn.
‘ Before proceeding further, the court notes that Harris was' injured in a 1990 work-related accident and that his rights would ordinarily be governed by the Alabama Workmen’s Compensation Act (“the old Act”), former § 25-5-1 et seq., Ala. Code 1975. See Wal-Mart Stores, Inc. v. Green, 740 So.2d 412 (Ala.Civ.App.1999) (date of injury, not date of' final order approving settlement, determines which version of statute applies). Moreover, in the 1993 settlement, the parties agreed, and the trial court ordered, that the employer would be liable for medical expenses “as are required by the workmen’s compensation laws of Alabama,” which references the old Act. See Ala. Acts 1992, Act No. 92-537, § 52 (noting that the old Act was known as the “Alabama Workmen’s Compensation Law,” whereas the amended Act would be entitled the “Alabama Workers’ Compensation Law”). Nevertheless, the parties tried, and' the trial court decided, the underlying ease under the theory that Harris’s right to receive continuing attendant care at the expense of Alabama Forest Próducts was to be determined by application of the current medical-benefit provisions of the Alabama Workers’ Compensation Act (“the Act”), § 25-5-1 et seq., Ala.Code 1975, and Rule-480-5-5-.30, Ala. Admin. Code (Dep’t of Labor), ;a regulation promulgated by the then Départment of Industrial Relations in 1996 pursuant to § 25-5-293, Ala.Code 1975, a part of the Act.[2] Hence, this court *925 will analyze the issues on. appeal under current Alabama workers’ compensation law. See generally Reed v. Madry, 585 So.2d 909 (Ala.1991) (when parties tried case under certain legal theory,- appellate court would treat that theory as law of the case, although not necessarily agreeing to its correctness).
Section 25-5-77(a), Ala.Code 1975, generally provides that an employer shall pay for
“reasonably necessary’medical and surgical treatment and attention, physical rehabilitation, medicine, medical and surgical supplies, crutches, artificial members, and other apparatus as the result of an accident arising out of and in the course of thé employment, as may be obtained by the injured employee....”
Unlike Minnesota law, see Minn.Stat., § 176.35(l)(b), on which the Act is generally based, the Act does hot specifically provide compensation for nursing services provided by the family members .of-an injured employee. The question, therefore, is whether the general-language of § 25-5-77(a) includes compensation for such services.
In Osorio v. K & D Erectors, Inc., 882 So.2d 347 (Ala.Civ.App.2003), this court held that § 25-5-77(a) could not be construed to include compensation for services provided by family members to assist a disabled employee with grooming, personal hygiene, food preparation, bathing, and dressing. In so holding, this court followed Ex parte City of Guntersville, 728 So.2d 611 (Ala.1998), in which our supreme court essentially stated that an apparatus falls within the coverage of § 25-5-77(a) only if it directly serves to improve a disabled employee’s condition, but not if it is prescribed solely to facilitate the independent functioning of the injured employee. 728 So.2d at 616-17. Osorio extrapolated -from that language that only services designed to improve the physical or mental condition of a disabled employee could be considered medical attention within the meaning of § 25-5-77(a). 882 So.2d at 350.
In parte Mitchell, 989 So.2d 1083 (Ala.2008), our supreme court explained that the language from Ex parte City of Guntersville upon which Osorio relied was no more than dicta that was “too restrictive and inconsistent with legislative intent.” 989 So.2d at 1092, The supreme court held that,
“in order to constitute ‘other apparatus’ and be compensable as a medical benefit under § 25-5-77(a), [Ala.Code 1975,] the item must be: (a) reasonably necessary and (b) intended to improve1 the injured employee’s condition; to prevent the further deterioration of the employee’s condition, or to relieve the employee from the effect of his condition by restoring the employee to a basic level of appearance or functioning.”
Id. In Mitchell, the supreme court essentially clarified that the benefits available under § 25-5-77 include not only recuperative devices, but also preventative and functional aids. It follows that the other benefits set out in § 25-5-77, including “medical attention,” are not-limited solely to treatment and services aimed at improving the underlying physical or mental condition of an injured employee as was decided by this court in Osorio. Rather, our supreme court indicated in Mitchell that *926 treatment and services fall within the scope of § 25-5-77 if they are designed to prevent the deterioration of an injured employee’s physical or mental condition or to aid the employee in achieving normal function lost due to his or her injury. Based on the holding in Mitchell, the primary basis for the holding in Osorio no longer remains sound.
On application for rehearing in Osorio, Presiding Judge Yates dissented and argued that the term “medical attention” within § 25-5-77 should be liberally construed to include attendant-care services provided by nonprofessional family members.[3] 882 So.2d at 354-57. Presiding Judge Yates pointed out that § 25-5-1(14), Ala.Code 1975, defines “medical” as ‘“[ajll services ... provided by a provider’ ” and that § 25-5-1(13), Ala.Code 1975, defines “providers” to include not only medical professionals but any “ ‘other person ... providing treatment [or] service.’” 882 So.2d at 355 (Yates, P.J., dissenting) (emphasis added; emphasis omitted). We add that, in ordinary parlance, the term “attention” means “the act or state of attending.” Merriam-Webster’s Collegiate Dictionary 79 (11th ed.2003).
When read in light of our supreme court’s decision in Mitchell and the foregoing statutory definitions, and keeping in mind our legislature’s mandate to liberally construe the remedial provisions of the Act to effectuate their intended beneficent purposes, see Ala. Acts 1992, Act No. 92-537, § 1, the term “medical attention” encompasses attendant-care services. When a nonprofessional family member supplies treatment or services designed to prevent further deterioration of the impaired physical or mental condition of an injured employee, that family member acts as a provider supplying medical attention to the injured employee. Likewise, when a nonprofessional family member watches over and aids the injured employee in performing the ordinary activities of daily living because the employee’s injurious condition prevents him or her from performing those essential activities safely and independently, the family member serves as functional aid providing medical attention by relieving the employee from the disabling effects of his or her injury. To the extent Osorio holds otherwise, we hereby overrule that decision.
In concluding that the Act covers attendant-care services, the trial court relied, in part, on Rule 480-5-5-.30, Ala. Admin. Code (Dep’t of Labor).[4] That regulation, entitled “Home Health Care Service,” provides, in pertinent part:
“(3) Payment may be made for authorized services to the following provider types, subject to the following guidelines:
[[Image here]]
“(c) Authorized services by nonprofessional family members are reimbursable up to eight (8) hours in any 24-hour period....
[[Image here]]
“(e) Family members and other persons who are not trained professional nursing personnel may receive payment in the amount of the current *927 minimum wage if the following requirements have been satisfied:
“1. The attendant has received adequate instruction from the authorized treating provider regarding the services to be provided in the home;
“2. The services provided must be beyond the scope' of the normal household duties and must be in the nature of services ordinarily rendered by trained professional personnel in hospitals or nursing homes; and
“3. The medical necessity justification shall be sufficient to identify the nature and approximate value of the services provided.”
Alabama Forest Products argues that the trial court erred in considering that regulation as legal authority supporting the compensability of attendant-care expenses because, it says, it impermissibly expands upon the statutory language in § 25-5-77.
“An administrative regulation must be consistent with the statute pursuant to which it was promulgated; it cannot usurp legislative power, and may neither subvert nor enlarge upon statutory policy.” Ex parte Southeast Alabama Med. Ctr., 835 So.2d 1042, 1052 n. 10 (Ala.Civ.App.2002). Based on our foregoing discussion, however, we hold that Rule 480-5-5-.30 does not conflict with § 25-5-77 to the extent it recognizes the compensability of attendant-care services performed by nonprofessional family members.[5] Hence, the regulation does not usurp legislative power or subvert or enlarge legislative policy in that regard, and this court will not invalidate Rule 480-5-5-.30 based on the argument asserted by Alabama Forest Products.
Based on the factual record before us, we conclude that the trial court did not err in ordering Alabama Forest Products to reinstate the attendant-care payments. The evidence indicates that, due to the severity of his injuries, Harris regularly requires assistance with the ordinary activities of daily living. Harris further needs help in performing his leg exercises, in taking his oral medication, in applying medicine onto his injured areas, and in preventing bedsores. Dr. Stephenson testified that attendant-care services will prevent the deterioration of Harris’s physical condition, that he considers attendant care reasonably necessary medical attention and physical rehabilitation, and that Harris would require skilled-nursing care if his family members did not act for his benefit. As set out above, Harris did not have to further prove that the attendant care would actually improve his physical condition in order to secure the judgment.
The fact that Harris retains some limited mobility and function such that he does not require constant monitoring and attendance does not detract from our holding.[6] Section 25-5-77 does not premise the provision of any medical benefits on the extent of the injured employee’s disability. See 2 Terry A. Moore, Alabama Workers’ Compensation § 17:6 (2d ed.2013). Rather, an injured employee is entitled to attendant care based on proof that, because of his or her injury, at *928 tendant care is reasonably necessary to improve his or her condition, to prevent the deterioration of the condition, or to relieve the employee of the adverse effects of his or her injury on his or her ability to function. Ex parte Mitchell, supra. An employee heed not be permanently and totally physically disabled or require continuous or full-time care in order to meet that criteria. Nevertheless, we point out that the evidence shows that Harris ordinarily receives attendant care throughout the day and that, even when physically alone, he always keeps his telephone nearby in case he needs help from Willie, who stays only moments away. The record does not support any contention that Harris essentially functions independently, but it adequately supports the finding of the trial court that Harris needs attendant care. See Landers v. Lowe’s Home Ctrs., Inc., 14 So.3d 144, 151 (Ala.Civ.App.2007) (“Th[e] statutorily mandated scope of review [under § 25-5-81(e)(2), Ala.Code 1975,] does not permit this court to reverse the trial court’s judgment based on a particular factual finding on the ground that-substantial evidence' supports a contrary factual finding; rather, it permits this court to reverse the trial court’s judgment only if its factual finding is not supported by substantial evidence.”).
For the foregoing reasons, the judgment of the trial court is affirmed
AFFIRMED.
THOMPSON, P.J., and PITTMAN and DONALDSON, JJ„ concur.
THOMAS, J., concurs in the result, without writing.

. Harris also asserted a contempt claim seeking attorney’s fees, which the trial court ultimately denied. Harris does not cross-appeal from that part of the judgment denying the contempt claim.

. In its postjudgment motion, .Alabama Forest Products raised the applicability of the old Act for the first time. Because the trial court allowed the postjudgment motion to be denied by operation of law, the trial court did not consider that argument. See Williams v. Valley View Health & Rehab., LLC, 64 So.3d 638, 641 (Ala.Civ.App.2010) (""“[A] trial court has the discretion to consider a new legal argument in a post-judgment motion, *925 but is not required to do so.' ” ' ” (quoting Espinoza v. Rudolph, 46 So.3d 403, 416 (Ala.2010), quoting in turn Special Assets, L.L.C. v. Chase Home Fin., L.L.C., 991 So.2d 668, 678 (Ala.2007), quoting in turn Green Tree Acceptance, Inc. v. Blalock, 525 So.2d 1366, 1369 (Ala.1988))).

. On application for rehearing in Osorio, Judge Crawley concurred specially and agreed that the Act should be liberally construed to include attendant-care expenses when an expert attests that such services constitute reasonably necessary medical care or attention. 882 So.2d at 352-53.

. We note that, in Osorio, a majority of the court did not address the effect of Rule 480-5-5-.30 because the injured employee did not raise any argument as to that regulation until his application for rehearing. See 882 So.2d at 353 (Thompson, J., concurring specially on denial of rehearing).

. Because neither party has raised the issues, we do not address the authority of the Department of Labor to promulgate the regulation or the enforceability of the specific conditions and limitations set out in Rule 480-5-5-.30.

. The trial court ordered Alabama Forest Products to pay Harris’s family members "at the rate set out in [Rule 480-5-5-.30(3)(c) & (e),” which allows for payment of up to 8 hours per day at the minimum wage. Alabama Forest Products does not specifically argue that the evidence fails to support that part of the judgment.