In the Matter of the Claim of WILLIAM NALLAN, JR., Respondent-Appellant, v MOTION PICTURE STUDIO MECHANICS UNION, LOCAL No. 52, et al., Appellants-Respondents, and NALLAN ASSOCIATES, INC., et al., Appellants-Respondents. WORKMEN'S COMPENSATION BOARD, Respondent.

Third Department, November 13, 1975

*David Hirschhorn* for respondent-appellant.

*Philip J. Caputo* for Motion Picture Studio Mechanics Union, Local No. 52 and another, appellants-respondents.

*Jones & Kafka (Charles J. Jones* of counsel), for Nallan Associates, Inc., and another, appellants-respondents.

*Louis J. Lefkowitz, Attorney-General (Jorge L. Gomez* and *Daniel Polansky* of counsel), for Workmen's Compensation Board, respondent.

KOREMAN, J. Claimant was the president and sole stockholder of the employer, Nallan Associates, Inc., which supplied sound and recording services to the motion picture industry. At the same time he was a member of the Motion Picture Studio Mechanics Union, Local No. 52 and was a member of its executive board. He represented the interests of soundmen in Local No. 52 and was given an allowance of $10 for attendance at each executive board meeting. On September 30, 1969 he was shot by an unknown assailant while in the lobby of a building in which he was to attend a meeting of the executive board of Local No. 52 and where he had arranged to meet one George Wood, another sound engineer, in order to exchange sound equipment. As a result of the gunshot, claimant suffered a transection of the spinal cord which rendered him a permanent paraplegic. He is confined to a wheelchair, but has become partially self-sufficient.

The board found that the claimant was an employee of both Local No. 52 and of Nallan Associates, Inc., that he sustained an accidental injury on September 30, 1969 in the nature of a gunshot wound which arose out of and in the course of his dual employment, and that the respective liability of each employer should be in proportion to the claimant's earnings with each employer. The board further found that the claimant was entitled to an award of compensation at the reduced earnings rate of $70, payable two thirds by the carrier for the employer Nallan Associates, Inc. and one third by the carrier for Local No. 52, and that the sum of $150 per week be allowed to claimant's wife for nursing services, as the claim-

ant is a paraplegic and is confined to a wheelchair even though he may be working. Finally, although the board directed the carriers to pay for all fixtures and attachments for the claimant's automobile and home, it found that a new automobile for the claimant was not allowable and was not necessary.

On this appeal, Local No. 52 contends that the board erred, as a matter of law, in finding that claimant was an employee of the union and also in computing his average weekly wage on the alleged value of his services to his respective employers at the time of the accident. Both Local No. 52 and Nallan Associates, Inc. question the propriety of the award of $150 per week for nursing services. In his cross appeal, claimant contends that the allowance for nursing services is inadequate and that such services may be subject to the Minimum Wage Act (Labor Law, § 650 *et seq.*). Claimant also urges that the employers are obliged to furnish him with an automobile for use in traveling to and from work.

The question of whether claimant was an employee is a factual one within the sole province of the board, and, if supported by substantial evidence in the record, the board's determination must be affirmed. *(Matter of King v Kelley,* 41 AD2d 798; *Matter of Sepulveda v Fischl Bros. Button Co.,* 38 AD2d 983; *Matter of Worth v Hubbell Lbr. Corp.,* 29 AD2d 1025.)* The rule in this State has long been that whether evidence is substantial is to be determined in the light of the record as a whole. *(Matter of Kelly v Murphy,* 20 NY2d 205.)* Substantial evidence basically is "the essence of the entire evidence as applied to a particular administrative determination and some of which must be of a sound, competent and recognizable probative character attributable to whatever determination the particular administrative agency should make." *(Matter of Paulsen [Catherwood],* 27 AD2d 493, 495.)* There was evidence before the board that, as a member of the union's executive board, claimant attended its regular and special meetings, worked in committees, prepared reports, went out in the field and took care of disputes, and participated in numerous investigations and consultations. In addition, the secretary-treasurer of the union testified that claimant's status was that of an employee of the union at the time he sustained accidental injuries. There was also evidence before the board from which it could find that the various duties performed by the claimant, in addition to his attend-

ance at meetings, were an integral part of the union's regular business of providing proper employment for its members, and that the activity of the union was directly benefited by the work of the claimant. Thus, an employment relationship could be found under the relative nature of the work test. *(Matter of King v Kelley,* 41 AD2d 798, *supra; Matter of Baker v Burnett's Contr. Co.,* 40 AD2d 741; *Matter of Worth v Hubbell Lbr. Corp.,* 29 AD2d 1025, *supra).* Accordingly, the board's finding that the claimant was an employee of the union as well as of Nallan Associates, Inc. has "a reasonable fulcrum of support in the record" and must be affirmed. *(Matter of Paulsen [Catherwood],* 27 AD2d 493, 495, *supra.* See, also, *Matter of Gordon v New York Life Ins. Co.,* 300 NY 652.)

The board arrived at claimant's average weekly earnings on the basis of claimant's testimony that the value of his services to the union was approximately $7,000 per year, and to Nallan Associates, Inc., approximately $14,000 per year. Only the award against the union employer is disputed.

The three methods for computing average weekly wages are provided by section 14 of the Workmen's Compensation Law. Only the provisions of subdivision 3 of that section would be applicable here since neither subdivision 1 nor 2 can "reasonably and fairly be applied". Under the provisions of subdivision 3, the average annual earnings shall be such sum as shall reasonably represent the annual earning capacity of the employee in that employment, with a minimum of 200 times his average daily wage as salary. The court finds that subdivision 3 of section 14 was "implicitly applied by the board" in computing claimant's average weekly wage, even though there is no reference in its decision as to which subdivision or method was actually employed *(Matter of Sneyd v Joy-Kar Taxi,* 34 AD2d 722). Moreover, the record discloses that the Referee applied the method provided for in subdivision 3 because he found it impossible to determine claimant's earnings with each employer, since the remuneration received from the respective employments did not truly represent the value of the services rendered in each employment. The court concludes, therefore, that the $10 allowance to the claimant for attendance at monthly meetings did not fairly represent claimant's earning capacity in his employment with the union, and that the method employed by the board to establish average weekly wage was proper.

The award of $150 for nursing services performed by claim-

ant's wife was proper and is supported by substantial evidence *(Matter of Leskin v Savin Constr. Co.,* 21 AD2d 717; *Matter of Haeusser v Schaefer Brewing Co.,* 19 AD2d 944; *Matter of Berkowitz v Highmount Hotel,* 281 App Div 1000). The amount of the award, however, must be paid only to the claimant. (Workmen's Compensation Law, §§ 25, 33.)

The board correctly found that claimant is not entitled to be provided with an automobile for travel to and from work. A motor vehicle is not a medical apparatus or device within the scope of section 13 of the Workmen's Compensation Law *(Matter of De Croix v Sumergrade & Sons,* 20 AD2d 735; *Matter of Carniato v Wheeler Corp.,* 7 AD2d 328).

The decision should be modified so as to provide for payment of award for nursing services directly to claimant, and, as so modified, affirmed.

REYNOLDS, J. (dissenting). In my opinion there is no substantial evidence to support the finding that claimant was an employee of the union and the method used to establish the average weekly wage was unconscionable and illegal.

HERLIHY, P. J., GREENBLOTT and MAIN, JJ., concur with KOREMAN, J.; REYNOLDS, J., dissents and votes to reverse in an opinion.

Decision modified so as to provide for payment of the award for nursing services directly to claimant, and, as so modified, affirmed, without costs.