Edward BOGUE, Petitioner,

v.

SDI CORPORATION, INC., Colorado Compensation Insurance Authority, and the Industrial Claim Appeals Office, Respondents.

No. 95CA1241.

Colorado Court of Appeals,
Div. V.

May 16, 1996.

Rehearing Denied June 27, 1996.

Certiorari Denied Jan. 27, 1997.

Turner & Meiklejohn, P.C., Scott A. Meiklejohn, Denver, for Petitioner.

Dufford & Brown, P.C., Douglas A. Thomas, Douglas P. Ruegsegger, Denver, for Respondents SDI Corporation, Inc. and Colorado Compensation Insurance Authority.

No Appearance for Respondent Industrial Claim Appeals Office.

Opinion by Judge CASEBOLT.

In this workers' compensation case, the issue is whether claimant, Edward Bogue, is entitled to an award of a wheelchair-accessible van as a compensable medical benefit. We affirm the Panel's order which determined that the evidence, findings of fact, and applicable legal authority do not support such a conclusion.

The facts are essentially undisputed. As a result of a work accident, claimant was ren-

dered an incomplete quadriplegic. Employer admitted liability for permanent total disability.

At the time of the hearing, claimant testified that he lived at a nursing home facility which provided him with his basic necessities, including meals. He admitted that his employer, SDI Corporation, and its insurer, Colorado Compensation Insurance Authority (collectively CCIA), provided him with transportation to all of his medically-related appointments.

However, he testified that, because he maintained gross motor movement in his upper extremities, he desired to regain that level of independence he enjoyed before his accident. He testified that he wanted to look for, buy, and maintain a house, possibly seek retraining for a new job at the community college, possibly seek new employment, and have the ability to run errands and visit with family or friends on his own schedule.

He further testified that the only impediment to obtaining this level of independence was a lack of transportation. As an example, he explained that, when looking for homes, he had to rely mainly on his mother, who had to drive him and help him transfer between his wheelchair and her car. He stated that he was at risk of injury if a mistake occurred during this transfer process. He also explained that it was difficult for him to utilize public transportation because he physically was susceptible to extreme weather conditions. Thus, he reasoned, he needed a wheelchair-accessible van that would allow him to travel independently and redevelop an independent lifestyle.

In support of his request that CCIA purchase such a van for him, claimant submitted two letters from his doctor, which stated that it was "important" for claimant to be able to function independently and that a wheelchair-accessible van was a necessity in order for him to be able to do so.

The CCIA representative testified that claimant had access to several van services for conducting personal business. He further testified that CCIA took claimant to all medically-related appointments and planned to continue doing so.

The Administrative Law Judge (ALJ) determined that claimant did not require a wheelchair-accessible van to obtain medical treatment, but found that claimant did require such a van to cure and relieve him from the effects of his injury. Specifically, she found that one aspect of relieving the claimant from the effects of his injury was to help him obtain and maintain an independent, active, and productive lifestyle, and to obtain employment. She also found that a van would minimize risks of exposure to extreme temperatures while using public transportation, or of injury during transfers between claimant's wheelchair and a regular car.

Thus, she concluded that a wheelchair-accessible van was a medical necessity and CCIA was liable to pay for such a van and its modifications as a compensable medical "apparatus" or benefit pursuant to § 8–42–101(1)(a), C.R.S. (1995 Cum.Supp.).

On review, the Panel set aside the ALJ's order, concluding that it was not supported either by the facts or the law. This review proceeding followed.

■ Contrary to claimant's arguments, we find no error in the Panel's conclusion that, under the facts at issue, a wheelchair-accessible van is not a compensable medical "apparatus" or benefit.

Section 8–42–101(1)(a), C.R.S. (1995 Cum. Supp.) provides, in pertinent part:

> Every employer, regardless of said employer's method of insurance shall furnish ... such medical, hospital, and surgical supplies, crutches, and apparatus as may reasonably be needed at the time of the injury or occupational disease and thereafter during the disability to cure and relieve the employee from the effects of the injury.

■ For a particular apparatus to be considered a medical benefit under the statute, it must be a medical apparatus that is reasonably necessary for treatment of the injury or that provides therapeutic relief from the effects of the injury. *See Cheyenne County Nursing Home v. Industrial Claim Appeals Office,* 892 P.2d 443 (Colo.App.1995); *City & County of Denver v. Industrial Commission,* 682 P.2d 513 (Colo.App.1984) (cost of medi-

cally prescribed hot tub compensable because it relieved the symptoms of claimant's injury).

Further, the terms "relieve the effects of the injury" and "therapeutic benefit" have been narrowly construed. *See Cheyenne County Nursing Home v. Industrial Claim Appeals Office, supra.*

In *ABC Disposal Services v. Fortier,* 809 P.2d 1071 (Colo.App.1990), a division of this court held that the term "apparatus" in the statute was modified by the terms "medical, hospital, and surgical" and therefore refers to an apparatus used for treatment to cure or relieve the effects of the injury. Under that analysis, the division held that a medically prescribed snowblower did not provide a therapeutic benefit. The court concluded that the snowblower was not prescribed as a medical aid to cure claimant or relieve him of the symptoms of his injury but, rather, was prescribed to provide an easier method for him to perform a household chore, even though the snowblower was prescribed to avoid exacerbations of claimant's back injury.

In *Cheyenne County Nursing Home v. Industrial Claim Appeals Office, supra,* a division of this court denied the request of a quadriplegic wheelchair-restricted claimant for installation of a stair glide to obtain access to her basement during dangerous tornado weather. Relying on *Hillen v. Tool King,* 851 P.2d 289 (Colo.App.1993) (lawn care service not prescribed to cure or relieve symptoms of injury but only to relieve claimant from rigors of yard work), and *Fortier,* the division recognized that a disabled person may be exposed to certain dangers which are particular to his or her lack of mobility and acknowledged that some of these limitations could be reduced or eliminated by additional equipment, assistance, or modifications. However, the division concluded that the existence of a threat from dangerous weather did not elevate a stair glide to the level of a compensable medical necessity.

In reaching this conclusion, the division relied upon *R & T Construction Co. v. Judge,* 323 Md. 514, 594 A.2d 99 (1991). In that case, a ventilator-dependent quadriplegic requested modifications to his home to allow him access to additional living areas. The

Maryland court held that modifications to the injured worker's residence would be limited to providing access to portions of the home involving medical necessity. It indicated that modifications which would promote the goal of giving the injured worker "a sense of increased independence and self-worth" were beyond the scope of the workers' compensation statutes. It further reasoned that such a goal would provide no meaningful standard to determine the extent of an insurer's obligation to provide alterations and, thus, there would be no meaningful limitation on an insurer's liability.

In denying the claimant's request for a stair glide in *Cheyenne,* the division stated that: "Whatever its presence might do for claimant's peace of mind, the stair glide provides no therapeutic benefits relative to [the claimant's] disabling injury." *Cheyenne County Nursing Home v. Industrial Claim Appeals Office, supra,* 892 P.2d at 446. Thus, it determined that a stair glide was not an "apparatus" within the meaning of § 8–42–101(1)(a).

▮ Here, a wheelchair-accessible van is not a medical aid reasonably necessary for treatment of the injury. A van does nothing to care for or remedy the quadriplegia. Nor, in our view, does it provide therapeutic medical relief from the effects or symptoms of the injury. Accordingly, we reject claimant's contention that if any device functions to make him "feel better," it necessarily provides "therapeutic relief." Such a standard is too broad and unworkable. *See R & T Construction Co. v. Judge, supra; Cheyenne County Nursing Home v. Industrial Claim Appeals Office, supra.* Hence, we conclude that a wheelchair-accessible van is not a compensable medical "apparatus."

We further note that the ALJ declined to find that the van would be used "incident" to the provision of reasonably necessary medical treatment. Thus, cases dealing with benefits incident to medically necessary services are inapposite here. *See Atencio v. Quality Care, Inc.,* 791 P.2d 7 (Colo.App.1990).

The ALJ found that the claimant's need for a van was to facilitate travel unrelated to his access to medical care. Consequently,

the facts here are also distinguishable from circumstances in which a specially equipped van is directly related to the receipt of treatment designed to cure or relieve the effects of the injury. *See Sigman Meat Co. v. Industrial Claim Appeals Office,* 761 P.2d 265 (Colo.App.1988).

We acknowledge the ALJ's finding that it was medically risky for claimant to be exposed to inclement weather while waiting for public transportation and to be transferred in and out of a non-wheelchair-accessible vehicle. However, in view of the reasoning of *Hillen, Fortier,* and *Cheyenne,* we agree with the Panel that the avoidance of these risks does not render a wheelchair-accessible van a medical necessity that is sufficiently connected to the claimant's physical condition.

We also agree with the Panel that the ALJ's findings that the van would allow claimant to become independent, to return to an active and productive lifestyle, and to maximize his mental recovery do not support the conclusion that the van is a compensable medical apparatus.

■ The purpose in requiring an employer to provide medical benefits under the Act is to allow an injured worker to reach maximum medical improvement and maintain that status. See *Grover v. Industrial Commission,* 759 P.2d 705 (Colo. 1988). But, the wheelchair-accessible van here was not prescribed as a medical aid to cure claimant of his injuries or relieve him of the medical symptoms of his quadriplegia. Rather, it was prescribed as a means to help him obtain some independence despite his injuries and to return to the most active and productive lifestyle which his physical and medical limitations would allow. While these are certainly salutary goals, they are beyond the intent of § 8–42–101(1)(a). *See Cheyenne County Nursing Home, supra.*

This conclusion is consistent with that reached by several, though not all, of the courts that have considered the same issue. *See* 2 A. Larson, *Law of Workmen's Compensation* § 61.13(a) (1995); *Nallan v. Motion Picture Studio Mechanics Union, Local # 52,* 49 A.D.2d 365, 375 N.Y.S.2d 164 (1975), *rev'd on other grounds,* 40 N.Y.2d 1042, 391 N.Y.S.2d 853, 360 N.E.2d 353 (1976) (para-

plegic claimant not entitled to a new, specially equipped automobile for travel to and from work); *McDonald v. Brunswick Electric Membership Corp.,* 77 N.C.App. 753, 336 S.E.2d 407 (1985) (provision of specially equipped van to disabled individual was not within statutory terms "other treatment or care" or "rehabilitative services," even though testimony established that claimant was enrolled in college and with van could drive himself and wheelchair to classes).

Accordingly, the Panel's order is affirmed.

ROTHENBERG and TAUBMAN, JJ., concur.