The summaries of the Colorado Court of Appeals published opinions constitute no part of the opinion of the division but have been prepared by the division for the convenience of the reader. The summaries may not be cited or relied upon as they are not the official language of the division. Any discrepancy between the language in the summary and in the opinion should be resolved in favor of the language in the opinion.

SUMMARY
November 15, 2018

2018COA162

**No. 17CA1171 Nanez v. Indus. Claim Appeals Office — Labor and Industry — Workers' Compensation — Benefits — Medical Aid**

In this workers' compensation case, a division of the court of appeals considers whether section 8-42-101(1)(a), C.R.S. 2018, covers the costs of providing conservator or guardian services to a permanently and totally disabled claimant suffering from a traumatic brain injury. The court concludes that an employer isn't statutorily liable for covering these services where they don't cure or relieve a claimant of the effects of his injury.

In this case, the conservator's and the guardian's services weren't prescribed as medical treatment to cure the claimant's traumatic brain injury or relieve him from its medical effects. Instead, these services were prescribed as a way of helping the

claimant deal with the tasks of daily life, such as managing his money, taking medication, and following physicians' instructions. So, the court concludes that these services aren't covered "medical treatment" under section 8-42-101(1)(a).

COLORADO COURT OF APPEALS                                    2018COA162

Court of Appeals No. 17CA1171
Industrial Claim Appeals Office of the State of Colorado
WC No. 4-922-618

Brian Nanez,

Petitioner,

v.

Industrial Claim Appeals Office of the State of Colorado; Mechanical & Piping,
Inc.; and Pinnacol Assurance,

Respondents.

ORDER AFFIRMED

Division IV
Opinion by JUDGE HAWTHORNE
J. Jones and Vogt*, JJ., concur

Announced November 15, 2018

Kaplan Morrell LLC, Michael H. Kaplan, Greeley, Colorado; Volant Law LLC, J.
Bryan Gwinn, Englewood, Colorado, for Petitioner

No Appearance for Respondent Industrial Claim Appeals Office

Harvey D. Flewelling, Denver, Colorado, for Respondents Mechanical & Piping,
Inc., and Pinnacol Assurance

Burg Simpson Eldredge Hersh & Jardine, P.C., John M. Connell, Englewood,
Colorado, for Amicus Curiae Workers' Compensation Education Association

Burg Simpson Eldredge Hersh & Jardine, P.C., Nelson Boyle, Englewood,
Colorado, for Amicus Curiae Colorado Trial Lawyers Association

*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art.

VI, § 5(3), and § 24-51-1105, C.R.S. 2018.

¶ 1     In this workers' compensation case, claimant, Brian Nanez, seeks review of a final order of the Industrial Claim Appeals Office (Panel), which affirmed an order by the administrative law judge (ALJ) determining that (1) Mechanical & Piping, Inc., and Pinnacol Assurance (collectively, employer) aren't liable to pay for medically prescribed conservator and guardian services under section 8-42-101(1)(a), C.R.S. 2018; and (2) Mr. Nanez's average weekly wage (AWW) shouldn't be increased.  We affirm the Panel's final order.

¶ 2     In doing so, we address an issue of first impression as to section 8-42-101(1)(a)'s language requiring "[e]very employer . . . [to] furnish such medical . . . treatment . . . as may reasonably be needed at the time of the injury . . . and thereafter during the disability to cure and relieve the employee from the effects of the injury."  Specifically, we address whether this language covers the costs of providing conservator or guardian services to a permanently and totally disabled claimant suffering from a traumatic brain injury.  Under the circumstances here, we conclude that the statutory language doesn't cover the costs of conservator or guardian services for Mr. Nanez because the conservator services

1

don't help care for or remedy his injury and Mr. Nanez didn't establish that the guardian services are reasonably needed to cure and relieve him from the effects of his injury.

## I.     *Facts and Procedural History*

¶ 3     Mr. Nanez worked as a plumber for Mechanical & Piping, Inc. As a result of a work-related accident, he sustained permanent, disabling closed head injuries, causing significant cognitive deficits. Mr. Nanez's authorized treating physician, Dr. Hugh Macaulay, and the physician who conducted a division-sponsored independent medical examination placed Mr. Nanez at maximum medical improvement (MMI) with a permanent impairment rating of forty-seven percent of the whole person, with forty percent of that being attributed to his brain injury. Employer admitted liability for permanent total disability.

¶ 4     Dr. Macaulay's MMI and impairment report noted that Mr. Nanez's brain injury prevented him from "maintain[ing] his function and independence." He described Mr. Nanez as having "executive function, but it is impaired"; "fair" short term memory; and "somewhat unreliable" recent memory. Mr. Nanez requires

2

assistance with everyday tasks such as grocery shopping, banking, and navigating around town.

¶ 5     Because of Mr. Nanez's cognitive impairments, Dr. Macaulay concluded that Mr. Nanez "will need to have oversight for his financial and medical management." And deeming their services to be "reasonable and necessary," Dr. Macaulay recommended that both a conservator and a guardian be appointed to function as Mr. Nanez's "peripheral brain." In a separate proceeding, a district court appointed both a conservator and a guardian for Mr. Nanez.

¶ 6     Mr. Nanez asked for a hearing, seeking an order requiring employer to pay for the conservator's and guardian's services under section 8-42-101(1)(a). He also asked that his AWW be increased to cover his lost potential earning capacity, reflecting wages he would've earned as a master plumber had he not been injured.

¶ 7     The ALJ denied both requests. Applying section 8-42-101(1)(a), he was "not persuaded that the [Workers' Compensation] Act provide[d] [him] with the authority to require [employer] to pay for a guardian and conservator to manage [Mr. Nanez's] workers' compensation benefits." And he found that the services of a conservator and a guardian were "legal in nature,"

3

noting that court cases allowing for housekeeping services are based on those services having relieved "the symptoms and effects of the injury and were directly associated with [the] claimant's physical needs."

¶ 8 As to the conservator's services specifically, the ALJ found that "ensuring that [Mr. Nanez] handles his finances does not cure or relieve [him] from the effects of the industrial injury," and even with such services, "[Mr. Nanez's] physical condition remains the same, although his financial situation may improve." And, as to the guardian's services, the ALJ found that "[Mr. Nanez's] medical records document a long history of medical treatment . . . prior to [him] having a guardian appointed," and that "the medical records do not document that [the issues as to Mr. Nanez's independent judgment involving his medical care, including taking medications] significantly affected [Mr. Nanez's] ability to receive appropriate medical treatment." So the ALJ found that "Mr. Nanez] ha[d] failed to establish that the duties of a guardian in managing [his] treatment and ongoing care are reasonable and necessary," and that employer "may be able to provide the same services for [Mr. Nanez] through the use of a nurse case manager."

¶ 9    The ALJ also concluded that Mr. Nanez's request to increase his AWW was "too speculative." And he noted that despite Mr. Nanez's professed intent prior to the accident to continue working as a plumber and earn his master plumber certification, it was "impossible to ascertain what would have happened with [Mr. Nanez] if not for his workers' compensation injury."

¶ 10   The Panel affirmed the ALJ's rulings. It followed the ALJ's reasoning, relying on *Bogue v. SDI Corp.*, 931 P.2d 477 (Colo. App. 1996), *Edward Kraemer & Sons, Inc. v. Downey*, 852 P.2d 1286 (Colo. App. 1992), and *Country Squire Kennels v. Tarshis*, 899 P.2d 362 (Colo. App. 1995). The Panel read these cases as reflecting the court of appeals' conclusion that section 8-42-101(1)(a) doesn't allow expenses for services that merely improve a claimant's lifestyle or assist with daily tasks. And, it held that a conservator's "functions are primarily financial and are not accurately described as medical or nursing services. Accordingly, they are not compensable expenses."

¶ 11   The Panel also held that a guardian's services "fail to fall easily into the category of medical benefits." And it noted that the statute governing guardians prohibits an individual from serving as both a

guardian and a "direct service provider" to an incapacitated person, *see* § 15-14-310(5), C.R.S. 2018, and that such "activities are largely outside of a reasonable definition of medical care."

¶ 12   As to Mr. Nanez's request to increase his AWW, the Panel found that the ALJ didn't err in applying the law and didn't abuse his discretion in determining that such an increase was speculative.

## II.   The Conservator's and Guardian's Services

¶ 13   On appeal, Mr. Nanez doesn't clearly say how he thinks the Panel erred in its final order.  Instead, he contends broadly that employer "should be liable to pay for the fiduciary services of a court-appointed [g]uardian and [c]onservator that provide relief from his brain injury" and that "fiduciary services that are required to compensate for an injured worker's lost brain functioning are medical benefits under the statute because such services relieve the effects of the brain injury."

¶ 14   Mr. Nanez also contends that employer failed to submit any rebuttal testimony or evidence at the hearing to contradict his evidence, and that the ALJ abused his discretion by disregarding the undisputed evidence that his injuries affect his ability to perform daily tasks.  He asserts that his cognitive deficits render

6

tasks such as banking, taking medication, following physicians' instructions, and managing his money nearly impossible. He argues that the conservator and guardian carry out these functions on his behalf, essentially acting as his "peripheral brain," and thus "reliev[e] the effects" of his admitted, work-related injuries.

¶ 15 Finally, Mr. Nanez contends that substantial evidence, without any contrary evidence, supports a finding that the conservator's and guardian's services are reasonable and necessary.

¶ 16 Employer responds that we needn't interpret section 8-42-101(1)(a) to determine whether the fees for the conservator's or guardian's services constitute medical treatment that must be provided under the statute because the ALJ's factual finding that those services aren't reasonable and necessary in this case is supported by substantial evidence.

¶ 17 We disagree with Mr. Nanez and conclude that substantial record evidence supports the ALJ's finding that Mr. Nanez failed to establish that the conservator's and guardian's services are reasonable and necessary in this case.

## A. Standard of Review and Law

¶ 18    We review an administrative agency's conclusions of law de novo. *Specialty Rests. Corp. v. Nelson*, 231 P.3d 393, 397 (Colo. 2010). Though we afford considerable weight to an agency's reasonable interpretation of its own enabling statute, we aren't bound by its legal interpretations. *Id.* We also defer to the interpretation of a statute adopted by the officer or agency charged with its administration as long as that interpretation is consistent with the statute. *Id.*

¶ 19    We are bound by and may not set aside the ALJ's factual findings if they are supported by substantial evidence in the record. *See* § 8-43-308, C.R.S. 2018; *Paint Connection Plus v. Indus. Claim Appeals Office*, 240 P.3d 429, 431 (Colo. App. 2010) ("When an ALJ's findings of fact are supported by substantial evidence, we are bound by them."); *Leewaye v. Indus. Claim Appeals Office*, 178 P.3d 1254, 1256 (Colo. App. 2007). As the fact finder, the ALJ may resolve conflicts in the evidence, make credibility determinations, determine the weight to be accorded to expert testimony, and draw plausible inferences from the evidence. *Kroupa v. Indus. Claim Appeals Office*, 53 P.3d 1192, 1197 (Colo. App. 2002).

¶ 20    "A claimant in a workers' compensation claim shall have the burden of proving entitlement to benefits by a preponderance of the evidence . . . ." § 8-43-201(1), C.R.S. 2018.

### B.    Compensable Medical Treatment Under the Statute

¶ 21    Section 8-42-101(1)(a) requires "[e]very employer . . . [to] furnish such medical, surgical, dental, nursing, and hospital treatment, medical, hospital, and surgical supplies, crutches, and apparatus as may reasonably be needed at the time of the injury . . . and thereafter during the disability to cure and relieve the employee from the effects of the injury."

¶ 22    We conclude that the conservator's and the guardian's services aren't medical treatment as that term is used in section 8-42-101(1)(a). It follows that employer isn't liable to pay for such services as compensable medical treatment under the statute.

¶ 23    We also conclude that substantial record evidence supports the ALJ's factual findings that (1) the conservator's services in handling Mr. Nanez's finances don't cure or relieve him of his injury's effects, and his "physical condition remains the same, although his financial situation may improve" with such services; and (2) Mr. Nanez failed to establish that the guardian's duties in

managing his treatment and ongoing care are reasonable and necessary.

¶ 24    Under the plain language of section 8-42-101(1)(a), the claimed expenses must be for medical or nursing treatment or incidental to obtaining such medical or nursing treatment. *Bellone v. Indus. Claim Appeals Office,* 940 P.2d 1116, 1118 (Colo. App. 1997) (citing *Country Squire Kennels,* 899 P.2d 362). And the service provided must be reasonably needed to cure and relieve the injury's effects and be related to the claimant's physical needs. *Id.* (citing *Hillen v. Tool King,* 851 P.2d 289 (Colo. App. 1993)). In other words, to be considered a medical benefit under the statute, the service must be a medical service that is reasonably necessary for treating the injury or that provides therapeutic relief from the injury's effects. *See Bogue,* 931 P.2d at 478 (applying the statutory interpretation in *Cheyenne County Nursing Home v. Industrial Claim Appeals Office,* 892 P.2d 443, 445 (Colo. App. 1995), which states that the statute requires "the apparatus *or service* have therapeutic benefit" (emphasis added), to support a claim for wheelchair-accessible van as medical "apparatus" or benefit).

### 1. *Claim for Conservator's Services*

¶ 25    Mr. Nanez's claim for the conservator's services is analogous to the claims made and rejected in *Cheyenne* and *Bogue*. Certainly, we recognize that those cases involved claims for a medical apparatus under subsection 101(1)(a), but we conclude that the principles enunciated therein are equally applicable to claims under the same statutory subsection for services asserted to be "medical treatment." After all, the statutory terms "treatment" and "apparatus" are both modified by the term "medical" and therefore refer to a treatment or an apparatus used "as may reasonably be needed . . . to cure and relieve the employee from the effects of the injury." § 8-42-101(1)(a); *see ABC Disposal Servs. v. Fortier*, 809 P.2d 1071, 1072 (Colo. App. 1990) (interpreting section 8-42-101's predecessor statute and stating that the term "apparatus" refers to a medical apparatus used for treatment "to cure and relieve from the effects of the injury"; therefore, a snowblower wasn't prescribed as a medical aid to cure or relieve the claimant of symptoms of his injury, but instead to provide an easier way to perform a household chore).

¶ 26    In *Cheyenne,* another division of this court denied the request of a quadriplegic, wheelchair-restricted claimant for a stair glider to allow her access to her basement during dangerous weather.  In doing so, the division relied on *Hillen,* 851 P.2d 289 (denying lawn care service not prescribed to cure or relieve symptoms of the claimant's injury, but only to relieve claimant from the rigors of yard work), and held that "the employer's obligation was limited to providing services that relieved the symptoms of the injury and which provided for the claimant's direct physical needs."  892 P.2d at 445.  The division ultimately concluded that "the stair glider provide[d] no therapeutic benefit relative to [the claimant's] disabling injury," nor was it "necessary for access to health or medical necessities."  *Id.* at 446.

¶ 27    The *Bogue* division relied on *Cheyenne* in concluding that, under the facts before it, a wheelchair-accessible van wasn't a compensable medical "apparatus" or benefit.  *Bogue,* 931 P.2d at 478.  The claimant had suffered a work-related accident that rendered him an incomplete quadriplegic.  Following the *Cheyenne* division's lead, the *Bogue* division held that for a particular apparatus to be a statutory medical benefit, "it must be a medical

12

apparatus that is reasonably necessary for treatment of the injury or that provides therapeutic relief from the effects of the injury." *Id.* And based on this reasoning, the division concluded that the requested van wasn't a medical aid reasonably necessary for treating the claimant's injury because the van wouldn't help care for or remedy the claimant's quadriplegia, nor would it provide therapeutic medical relief from the injury's effects or symptoms. *Id.* at 479.

¶ 28 We likewise conclude that the conservator's services provided by her exercising her powers "granted in . . . § 15-14-425" for Mr. Nanez's benefit to assist him with his workers' compensation claim and with handling his finances won't help care for or remedy Mr. Nanez's cognitive deficiencies caused by his traumatic brain injury. As the ALJ found, "ensuring that [Mr. Nanez] properly handles his finances does not cure or relieve [him] from the effects of the industrial injury"; in other words, Mr. Nanez's "physical condition remains the same, although his financial situation may improve."

¶ 29 The ALJ's finding and our conclusion are supported by substantial record evidence — namely, an opinion letter from Dr. Macaulay, Dr. Macaulay's MMI report, and Dr. Macaulay's

testimony at the hearing. First, in the letter, Dr. Macaulay said that he and Mr. Nanez's psychiatrist and psychologist agree that Mr. Nanez doesn't have the ability to adequately supervise conventional functions of daily life, and "to that end," they recommended "both a guardian and a conservator to provide him with adequate management in his activities of daily living." Second, in his MMI report, Dr. Macaulay said that "Mr. Nanez has significant need for supervision," and he needs "someone to oversee his planning, use of financial resources and protect him from other individuals and facilitate interactions." Finally, Dr. Macaulay testified at the hearing that because of Mr. Nanez's brain injury, he requires assistance with everyday tasks such as taking medication, following physicians' instructions, navigating around town, grocery shopping, banking, and managing his money.

¶ 30    But "compensation is not awarded . . . if the only services being rendered to the claimant are ordinary household services." *Edward Kraemer & Sons*, 852 P.2d at 1288; *see also ABC Disposal Servs.*, 809 P.2d at 1073 (holding that snowblower wasn't prescribed as medical aid to cure or relieve injury's symptoms, but to provide easier method of performing a household chore).

14

¶ 31     Dr. Macaulay didn't say that the conservator's services in managing Mr. Nanez's finances were necessary for treating Mr. Nanez's brain injury or that such services would provide therapeutic relief from the injury's effects.  Instead, he said that the conservator's services would act as a "peripheral brain" in the same manner that a seeing-eye dog "serves as peripheral eyesight," and that Mr. Nanez "needs help in guiding him in what he should be doing."  Dr. Macaulay also described what he would want the conservator to do as to Mr. Nanez's medical treatment and keeping him safe: "In regard to his medical treatment, I would like any comments or thoughts . . . [,] but the management of the medical is going to be mine and the management of the financial is going to be [hers]."  And finally, Dr. Macauley testified that "at this point, we're not going to improve [Mr. Nanez's] function."

¶ 32     Based on this substantial record evidence, we conclude that the conservator's services don't help care for or remedy Mr. Nanez's traumatic brain injury or his resulting cognitive disabilities.  Nor do her services provide Mr. Nanez therapeutic medical relief from his injury's effects or symptoms.  So we reject Mr. Nanez's contention that employer is statutorily liable to pay for the conservator's

15

services.  We also reject his contention that, as to the conservator's services, the ALJ abused his discretion by disregarding the undisputed evidence that his injuries affect his ability to carry out daily tasks.  As indicated above, the ALJ's finding that although the conservator's services assist Mr. Nanez in improving his financial situation, his physical condition remains the same, is supported by substantial record evidence.  *See* § 8-43-308.

### 2.    *Claim for Guardian's Services*

¶ 33    The ALJ found that Mr. Nanez "failed to establish that the duties of a guardian in managing [his] treatment and ongoing care are reasonable and necessary in this case."  Mr. Nanez contends that substantial evidence, without any contrary evidence, supports a finding that the guardian's services are reasonable and necessary. We disagree that no contrary evidence supported the ALJ's finding.

¶ 34    Determining whether services are either medically necessary to treat a claimant's injuries or incidental to obtaining such treatment presents a factual question.  *Bellone*, 940 P.2d at 1117. We must uphold an ALJ's resolution of a factual question that is supported by substantial evidence.  *Id.* at 1117-18.  "Substantial evidence is that which is probative, credible, and competent, such

16

that it warrants a reasonable belief in the existence of a particular fact without regard to contradictory testimony or inference." *City of Loveland Police Dep't v. Indus. Claim Appeals Office*, 141 P.3d 943, 950 (Colo. App. 2006).

¶ 35   The ALJ acknowledged Mr. Nanez's argument that the guardian's services allow him to schedule and attend medical appointments.  But he found that the same type of service could be provided by a less restrictive measure.  The ALJ based his finding on extensive medical records documenting Mr. Nanez's long history of medical treatment prior to the guardian being appointed.  And he found that although Dr. Macaulay testified to some significant doubts about Mr. Nanez's judgment as to his medical care, including taking medications, Mr. Nanez's medical records didn't document those issues as having significantly affected his ability to receive appropriate medical treatment.  The ALJ also found that employer may be able to provide the same services as a guardian in managing Mr. Nanez's treatment and ongoing care by using a nurse case manager to schedule his medical appointments and remind him of upcoming appointments.

17

¶ 36 As we read these findings, they rest on the premise that a nurse case manager can provide the services Mr. Nanez needs in managing his treatment and ongoing care for his work-related injury. We conclude that these findings are supported by substantial record evidence. Specifically, the record shows that a nurse case manager assisted in Mr. Nanez's care for approximately seven months. Her twenty-two pages of detailed medical review notes for that period show that, among other things, she maintained contact with Mr. Nanez's medical providers to keep updated on his progress, facilitated treatment recommendations and Mr. Nanez's compliance with those recommendations, monitored his medications and complaints for possible medical needs, and on at least one occasion attended a medical appointment with him. We have found nothing in the record, and Mr. Nanez hasn't pointed us to anything, indicating that the type of services provided by the nurse case manager were insufficient to manage Mr. Nanez's medical treatment and ongoing care. And Mr. Nanez concedes in his opening brief that "some of the [g]uardian's duties resemble services that could theoretically be provided by Pinnacol and/or a [nurse case manager]," and that Pinnacol

18

assigned another nurse case manager to Mr. Nanez's case after the hearing. So we conclude that substantial record evidence supports the ALJ's finding that a nurse case manager may be able to provide the same services as a guardian would in managing Mr. Nanez's treatment and ongoing care.

¶ 37 Still, Mr. Nanez argues that the guardian complements the nurse case manager by providing fiduciary services and the "sort of hand holding" his brain injury requires. But, again, the ALJ found, based on the record of Mr. Nanez's long medical history, that these issues hadn't affected Mr. Nanez's receiving appropriate medical treatment. Again, our review of the record doesn't show otherwise and Mr. Nanez hasn't pointed us to anything in the record showing otherwise.

¶ 38 We therefore conclude that the ALJ's factual findings are supported by substantial evidence, and we affirm the Panel's determination that Mr. Nanez failed to establish that the services of the guardian are reasonable and necessary in this case.

¶ 39 Finally, we note that "[t]he purpose in requiring an employer to provide medical benefits under the Act is to allow an injured worker to reach maximum medical improvement and maintain that status."

*Bogue*, 931 P.2d at 480 (citing *Grover v. Indus. Comm'n*, 759 P.2d 705 (Colo. 1988)). But, as with the wheelchair-accessible van in *Bogue*, the conservator's and the guardian's services here weren't prescribed as medical treatment to cure Mr. Nanez's traumatic brain injury or relieve him from its medical effects. Instead, these services were prescribed as a way of helping Mr. Nanez deal with everyday tasks of daily life. "While these are certainly salutary goals, they are beyond the intent of § 8-42-101(1)(a)." *Id.* And whether the services necessary to meet these salutary goals should be compensable under the statute is an intrinsically legislative decision that we must avoid making. *Town of Telluride v. Lot Thirty-Four Venture, L.L.C.*, 3 P.3d 30, 38 (Colo. 2000) (it's not up to a court to make or weigh policy).

### III. Requested AWW Increase

¶ 40    Mr. Nanez contends that the Panel erred in affirming the ALJ's denial of an increase to his AWW. We affirm this portion of the Panel's order.

¶ 41    The ALJ found that Mr. Nanez's request to increase his AWW based on his intent to earn a master plumber certification "would require too much speculation as to what Mr. Nanez would have

20

done if not for the work injury." Mr. Nanez argues that because the uncontroverted evidence established that he had "career aspirations," "plans . . . to continue in commercial plumbing," and "expectations" of obtaining his plumbers' license, his future AWW wasn't speculative but instead showed a demonstrated intent to pursue master plumber certification. Indeed, he argues, the evidence showed that his income was likely to increase. He argues that it would be "manifestly unjust" to freeze his wages at the amount he was earning when he was injured given that he potentially could have earned much more. So, he reasons, the ALJ should have acted under his discretionary authority to adopt a more equitable AWW.

¶ 42 We aren't persuaded. We agree with the ALJ and the Panel that "expectations," "a plan," and "career aspirations" don't constitute sufficient concrete steps toward Mr. Nanez's goal of becoming a master plumber to support an increase in AWW. Because any number of unforeseen barriers could have inhibited Mr. Nanez's intent to become a master plumber, we perceive no abuse of discretion in the ALJ's finding that Mr. Nanez's future earnings were too speculative to warrant increasing his AWW.

¶ 43    Under the Act, an ALJ "may compute the average weekly wage of [an] employee in such other manner and by such other method as will, in the opinion of the director based upon the facts presented, fairly determine such employee's average weekly wage." § 8-42-102(3), C.R.S. 2018.  This provision grants an ALJ wide discretion to determine a claimant's AWW.  Because the determination is discretionary, we won't set it aside absent a showing that the ALJ abused his discretion.  "Because the authority to select an alternative method for computing the average weekly wage is discretionary, we may not interfere with the ALJ's order unless it is beyond the bounds of reason, that is, where it is unsupported by the evidence or contrary to law."  *Pizza Hut v. Indus. Claim Appeals Office*, 18 P.3d 867, 869 (Colo. App. 2001).

> [T]he claimant's average weekly wage is to be calculated "in such other manner and by such other method as will, *in the opinion of the [ALJ]*" fairly compensate a claimant.  The method of calculation to be used in the ultimate determination of the claimant's award then . . . is to be left in the first instance to the ALJ.  Put simply, the ALJ should be allowed to employ the discretion accorded him or her . . . before a court expropriates that discretion by ordering a specific compensation award to the claimant.

22

*Coates, Reid & Waldron v. Vigil*, 856 P.2d 850, 857-58 (Colo. 1993) (citation omitted).

¶ 44    The ALJ found that Mr. Nanez's professed plan to earn his master plumber certification was simply that — a plan with no concrete steps taken toward its execution. Distinguishing the facts before him from those in *Pizza Hut*, the ALJ noted that unlike Mr. Nanez, the injured worker in *Pizza Hut* had completed his degree and begun a job in his field of choice. *See* 18 P.3d at 868. Mr. Nanez, by contrast, hadn't yet enrolled in classes to become a master plumber when he was injured. Thus, although Mr. Nanez testified that he had hoped to become a master plumber and own his own plumbing business, those goals were merely aspirational at the time of his accident. We can't say that the ALJ abused his discretion in deciding that Mr. Nanez's potential future wages were too speculative to warrant increasing his AWW.

¶ 45    Because the ALJ's decision declining to increase Mr. Nanez's AWW is supported by substantial record evidence, the Panel properly affirmed it. *See Coates, Reid & Waldron*, 856 P.2d at 857-58; *Pizza Hut*, 18 P.3d at 869.

23

## IV.  Conclusion

¶ 46    The Panel's final order is affirmed.

JUDGE J. JONES and JUDGE VOGT concur.